**22-7058**

# United States Court of Appeals for the District of Columbia Circuit

**ELI BOROCHOV, et al.,**

*Plaintiffs-Appellants*,

**v.**

**ISLAMIC REPUBLIC OF IRAN, et al.,**

*Defendants-Appellees*.

**Appeal from the United States District Court for the District of Columbia
No. 1:19-cv-02855-TNM**

## SUPPLEMENTAL BRIEF OF AMICUS CURIAE

Catherine E. Stetson
Andrew Nell (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
(202) 701-4925
ces3t@lawschool.virginia.edu

*Appointed counsel for Amicus Curiae*

This Court requested supplemental briefing about whether the terrorism

exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A,

embraces "cases in which only an attempted extrajudicial killing occurred, or in

which the provision of material support for an extrajudicial killing caused only

non-lethal injuries." *Amicus curiae* respectfully submits that § 1605A covers

cases—like this one—in which liability is predicated on the provision of material

support for extrajudicial killings, even if unsuccessful. A case in which a foreign

state was sued for *directly* but unsuccessfully attempting an extrajudicial killing

would present more difficult questions, but this Court need not reach those issues

here.

28 U.S.C. § 1605A(a)(1) asks whether the case seeks money damages

"against a foreign state for personal injury or death that was caused by an act of

torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of

material support or resources for such an act" by agents or officials of the foreign

state. The key words here are "for" and "such an act."

In this case, the District Court correctly explained that "for" in the material

support prong "indicate[s] the object or purpose of an action or activity," as "[o]ne

dresses 'for' dinner or studies 'for' an exam even if the dinner or exam never

occurs." *Borochov v. Islamic Republic of Iran*, 589 F. Supp. 3d 15, 32 (D.D.C.

2022). *See also Sissel v. United States HHS*, 799 F.3d 1035, 1043 (D.C. Cir. 2015)

(Rogers, Pillard, & Wilkins, JJ., concurring) (interpreting "for" in the Origination Clause to refer to object or purpose). Similarly, a foreign state can provide material support or resources "for" extrajudicial killings, and personal injuries may be "caused by" the provision of support for "such acts," regardless of whether anyone ultimately dies in the attempt. As the district court recognized in *Karcher v. Islamic Republic of Iran*, "[n]othing on the face of Section 1605A(a)(1) requires that the material support or resources for an intended extrajudicial killing actually result in someone's death, as long as the victim represented in the case was injured." 396 F. Supp. 3d 12, 57 (D.D.C. 2019).

Another district court in this Circuit reached a different conclusion in the ongoing *Force v. Islamic Republic of Iran* litigation, by reasoning that "[t]he ordinary understanding of the word 'killing,' of course, means that someone has died—it does not mean that the person came close to death, was placed in imminent apprehension of death, or even sustained life-threatening injuries." 610 F. Supp. 3d 216, 222 (D.D.C. 2022). The court also pointed out that attempts and primary crimes are defined separately in federal criminal law, that completed acts are often criminal when unsuccessful attempts are not, and that § 1605A incorporates definitions of "aircraft sabotage" and "hostage taking" that expressly include attempts, while the incorporated definition of an "extrajudicial killing" does not. *See id.* at 223–24. These are powerful considerations that would weigh

against holding that an *attempted* extrajudicial killing *is* an extrajudicial killing. But we agree with *Borochov*, *Karcher* and *Cabrera v. Islamic Republic of Iran*, 2023 WL 1975091 (D.D.C. January 27, 2023), that the statute textually covers material-support cases like this one regardless of whether attempted killing is killing.

The district court in *Burks v. Islamic Republic of Iran* reasoned that "both the phrase 'act of … extrajudicial killing' and the phrase 'material support or resources for such an act' ultimately refer back to the same, defined act: an extrajudicial killing." No. 16-cv-1102 (D.D.C.), Dkt. 65; *see also Force*, 610 F. Supp. 3d at 225 ("without a killing, the Court cannot conclude that the asserted injury was caused by 'an act of extrajudicial killing' or that the material support was provided for 'such an act.'"). But by using the language "such an act," Congress intended to cover material support for the *kind of* act that injured the plaintiff, not the specific act that injured the plaintiff. This Court has already held that the FSIA does not require plaintiffs to show that "a state's material support [was] directly for the specific act" that caused their injuries. *Owens v. Republic of Sudan*, 864 F.3d 751, 799 (D.C. Cir. 2017), *vacated on other grounds sub nom. Opati v. Republic of Sudan,* 140 S. Ct. 1601, 1610 (2020); *see also Cabrera*, 2023 WL 1975091 at *8 (noting that the *Burks* court's "logic is incompatible with" *Owens*).

We think the statute unambiguously covers the present case, but we also agree with the *Cabrera* court's conclusion that even if some ambiguity exists, it should be resolved in favor of jurisdiction here—both because "interpreting 'for' as a reference to the intended purpose of a defendant's material support" is the "more natural" reading, and because this Court has instructed that any ambiguities in the scope of the terrorism exception should be interpreted "'flexibly and capaciously'" to further Congress's purposes. *Cabrera*, 2023 WL 1975091 at *7 (quoting *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1167 (D.C. Cir. 2013)); *see also Karcher*, 396 F. Supp. 3d 12, 57 (reaching similar conclusions on the basis of the FSIA's legislative history).

Appellants argue that the phrase "act of" is capacious enough to incorporate attempted killings into "act of . . . extrajudicial killing." Br. at 4. This Court need not reach that issue in this case; but we agree with the district court in *Force* that as a matter of text and statutory structure, an attempted killing is not a killing.

Early decisions holding that attempts are covered by the terrorism exception appear to have rested on a misunderstanding of the Torture Victim Protection Act of 1991 ("TVPA"), Pub. L. No. 102–256, § 3(a), 106 Stat. 73, from which the definition of an "extrajudicial killing" was borrowed, *see* 28 U.S.C. § 1605A(h)(7). In *Gill v. Islamic Republic of Iran*, the district court pointed to language in two prior TVPA cases suggesting that unsuccessful attempted killings would be

covered by that statute. *See* 249 F. Supp. 3d 88, 98–99 (D.D.C. 2017) (citing *Warfaa v. Ali*, 33 F.Supp.3d 653 (E.D. Va. 2014), and *Doe v. Constant*, 2006 WL 3490503 (S.D.N.Y. Oct. 24, 2006)). But neither *Warfaa* nor *Constant* contains any reasoning, and the cited language seems to be clearly mistaken. The TVPA only vests a cause of action for "extrajudicial killing" in "the individual's legal representative, or to any person who may be a claimant in an action for wrongful death." 28 U.S.C. § 1350 note § 2(a). It thus "necessarily assumes that the victim of an extrajudicial killing is in fact deceased." *Appel v. Hayut,* 2021 WL 2689059, at *9 (S.D.N.Y. June 30 2021).

The court in *Roberts v. Islamic Republic of Iran* offered a different path to finding jurisdiction over attempted killings, reasoning that the words "act of" in "act of … extrajudicial killing" have to be given some meaning and that, "[p]lausibly read," an "'act' might also refer to '[t]he process of doing' something" rather than to a "thing done." 581 F. Supp. 3d 152, 169–70 (D.D.C. 2022). Armed with that supposed ambiguity, the court applied the interpretive principle from *Van Beneden.* But we agree with several other district courts that the reasoning of *Roberts* is not persuasive. The dictionaries that list "the process of doing" as the second-level noun meaning of "act" give "caught in the act" as their illustration. *See Cabrera*, 2023 WL 1975091, at *10. As a matter of ordinary usage, a person

caught while attempting murder is not caught in the "act" of murder itself, but rather in the act of attempted murder.

It may seem odd for Congress to authorize suit against foreign states for providing material support for unsuccessful attempts, but not when states directly but unsuccessfully attempt an extrajudicial killing. But if Congress wanted to treat support for acts and the acts themselves the same, it easily could have used language that linked the two—§ 1605A(a)(1) only requires material support "for such an act," not for "that act." And because direct material support for a particular killing may be harder to prove than who perpetrated the underlying act, it is perhaps understandable that Congress would provide for broader liability against the funders of terrorism. Congress may also have believed that targeting the funders of terrorism was more critical to achieving the deterrent effects sought by the statute. *See* H.R. Rep. No. 104–383 at 62. Most § 1605A cases involve material support because the individual terrorist is not a "foreign state." Congress may simply have focused on those cases.

There is also no reason for the Court to tackle this conundrum when it is not

presented here and may never arise. To resolve this case this Court need only

recognize that a foreign state can provide material support "for" extrajudicial

killing even if the attempt is unsuccessful.

<div style="margin-left: 40%;">

Respectfully submitted,

Catherine E. Stetson
Andrew Nell (Third Year Law Student)
Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
(202) 701-4925
ces3t@lawschool.virginia.edu

</div>

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the Federal Rule of Appellate

Procedure's type-volume limits because, excluding the parts of the document

exempted by Fed. R. App. P. 32(f), this document contains 1,462 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Word for Office 365 in 14-point Times New Roman.

<div align="right">

/s/ Catherine E. Stetson
Catherine E. Stetson

</div>

## CERTIFICATE OF SERVICE

I certify that on May 18, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Catherine E. Stetson
Catherine E. Stetson