IN THE

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**22-7058**

◆◆◆

ELI M BOROCHOV; RONEN STEVEN BOROCHOV; DEVORA SUE BOROCHOV; JOSEF S. BOROCHOV; SHIRA NECHAMA BOROCHOV; ABRAHAM M. BOROCHOV; YOAV GOLAN; ROTEM SHOSHANA GOLAN; YEHUDIT GOLAN; MATAN G. GOLAN; CICI JACOBSON; EDDY JACOBSON; CHAIM GOLDWATER; ESTHER GOLDWATER; SHMUEL GORFINKLE; SARA GORFINKLE; ESTHER FISHFEDER; DAVID FISHFEDER,

*Plaintiffs-Appellees,*

(*Caption continued on inside cover*)

―――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BRIEF FOR *AMICI CURIAE* ROBERT CANINE,
WESLEY WILLIAMSON, ALLEN SWINTON, SCOTT LILLEY,
CHRISTOPHER LEVI, RYAN SABINISH, WALTER BAILEY,
JOSH DENMAN, AND RANDOLPH DELBERT NANTZ
IN SUPPORT OF PLAINTIFFS-APPELLANTS**

STEVEN R. PERLES
PERLES LAW FIRM, PC
816 Connecticut Avenue, NW,
   12th Floor
Washington, DC 20006
(202) 955-9055
sperles@perleslaw.com

PETER RAVEN-HANSEN
GEORGE WASHINGTON
   UNIVERSITY LAW SCHOOL
Burns 411
720 20th Street, NW
Washington, DC 20052
(202) 994-8171
pravenhansen@gmail.com

*Attorneys for Amici Curiae*

Shari Mayer Borochov; Raphael Golan; Nadav Golan;
Yael Golan Inbar; Shai Fishfeder; Efrat Fishfeder;
Ohad Fishfeder; Omer Fishfeder; Shiri Fishfeder,

*Plaintiffs-Appellants,*

—v.—

Islamic Republic of Iran; Syrian Arab Republic,

*Defendants-Appellees.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

GLOSSARY ............................................................................................................. iii

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES ........................................................................................................1

INTEREST OF THE AMICI CURIAE AND SUMMARY OF ARGUMENT .........3

ARGUMENT .............................................................................................................4

    I.    The Terrorist Attacks in Which *Amici* Were Injured, and Iran's Material Support for Them, Were Intended to Kill. .......................................................4

    II.   Medical and Military Advancements Are the Reason for Reduced Fatalities, Not Because the Attacks Were Less "Heinous." .............................................7

CONCLUSION ..........................................................................................................8

APPENDIX A ....................................................................................................... A-1

# TABLE OF AUTHORITIES

**Cases**

*Force v. Islamic Republic of Iran*,
　610 F. Supp. 3d 216 (D.D.C. 2022)................................................................5

*Karcher v. Islamic Republic of Iran*,
　396 F. Supp. 3d 12 (D.D.C. 2019)..................................................... 4, 5, 6, 7

*Lee v. Islamic Republic of Iran*,
　518 F. Supp. 3d 475 (D.D.C. 2021)................................................................6

*Roberts v. Islamic Republic of Iran*,
　581 F. Supp. 3d 152 (D.D.C. 2022)................................................................5

**Statutes**

28 U.S.C. § 1605A ................................................................................... 3, 4, 8

28 U.S.C. § 1608(e) .........................................................................................3

**Rules**

Fed. R. App. P. 29(a)(4)(E) ..............................................................................3

# **<u>GLOSSARY</u>**

EFP: Explosively Formed Penetrator.

IRGC: Islamic Revolutionary Guard Corps

IRGC-QF: Islamic Revolutionary Guard Corps-Qods Force

FSIA: Foreign Sovereign Immunities Act

Ret.: Retired

PTSD: Post Traumatic Stress Disorder

# CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1)(A), Amici Curiae certify that, except for the following amici, all parties, intervenors, and amici appearing before the district court and in this court are listed in the Brief for Appellants.

- Joshua Denman
- Ryan Sabinish
- Scott Lilley
- Christopher Levi
- Walter Bailey
- Allen Swinton
- Wesley Williamson
- Robert Canine
- Randolph Delbert Nantz

**Rulings Under Review:** References to the rulings at issue appear in the Brief for Appellants.

**Related Cases:** Undersigned counsel are not aware of any related cases.

**Statues:** All applicable statutes, etc., are contained in the Brief for Appellants.

Dated: May 18, 2023

                              Respectfully submitted,

/s/ Peter Raven-Hansen
Peter Raven-Hansen
GEORGE WASHINGTON UNIVERSITY
LAW SCHOOL
Burns 411
720 20th Street, NW
Washington, District of Columbia 20052
Tel: (202) 994-8171
pravenhansen@gmail.com

PERLES LAW FIRM, PC
Steven R. Perles
816 Connecticut Ave., NW, 12th Floor
Washington, DC 20006
Tel: (202) 955-9055

*Attorneys for Amicus Curiae*

2

## INTEREST OF THE AMICI CURIAE AND SUMMARY OF ARGUMENT[1]

*Amici curiae* listed in the Appendix are U.S. veterans who were injured in terrorist attacks while serving in Iraq from 2004-2011. Each of the *amici* are plaintiffs in suits against Iran brought under the "Terrorism Exception" to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A. In these cases, *amici* have repeatedly established "by evidence satisfactory to the court," 28 U.S.C. § 1608(e), that Iran, acting through its proxies, Lebanese Hezbollah and the Islamic Revolutionary Guard Corps ("IRGC"), is responsible for directing these attacks on U.S. forces with the specific aim of killing large numbers of Americans. Very often Americans did die—but in a number of cases, including those brought by *amici*, the victims of a given Iranian-sponsored terrorist attack managed to survive, often with horrific injuries.

Indeed, many of the *amici* have lost limbs, the use of other body parts, and physical senses, suffered traumatic brain injuries and profound mental and emotional harm, and received prognoses of chronic pain or even shortened life spans. Many of the *amici* have survived attacks with wounds that would have been fatal but for

---

[1] *Amici* make the following disclosure pursuant to Fed. R. App. P. 29(a)(4)(E): no party's counsel authored this brief in whole or in part. No party, party's counsel, or any other person contributed any money to fund the preparation or submission of this brief.

3

recent improvements in battlefield medicine. It would be a tragic irony if Iran, in its terror campaign against U.S. forces, was a beneficiary of these medical advances.

*Amici* are writing to the Court because an adverse decision would eliminate their sole opportunity to hold Iran responsible for the injuries it has inflicted on them and many other former service members. That narrow view of the statute's jurisdiction, taken by only two of the many courts to have considered the issue, would *immunize* Iran for its role in committing terrorist attacks which the victims survived, usually with grievous injuries. That is not and cannot be the intent or purpose of § 1605A's Terrorism Exception.

## ARGUMENT

### I.  The Terrorist Attacks in Which *Amici* Were Injured, and Iran's Material Support for Them, Were Intended to Kill.

The *Karcher v. Islamic Republic of Iran* court, among others, explained that § 1605A reaches a state sponsor of terrorism's provision of material support "*for*" acts of extrajudicial killing—regardless of whether those acts actually resulted in death. 396 F. Supp. 3d 12, 57 (D.D.C. 2019) ("Nothing on the face of Section 1605A(a)(1) requires that the material support or resources for an intended extrajudicial killing actually result in someone's death, as long as the victim represented in the case was injured.").

Iran provided material support for each of the terrorist attacks in which amici were injured and did so with the intent to kill Americans and their allies. Given the

4

nature of those attacks, there is no concern, such as that raised by the court in *Force v. Islamic Republic of Iran*, that without a killing, a court cannot ascertain if the injuries were caused by such an act or material support for such an act, and not some "everyday (but foreseeable) torts committed by terrorist organizations that bear no connection to the 'repressive practices' that Congress intended to redress." 610 F. Supp. 3d 216, 225 (D.D.C. 2022).

For example, many of the attacks in our cases involved a powerful roadside bomb called an explosively formed penetrator ("EFP") that courts have found indicate an intent to kill:

> EFPs were specifically designed to punch through armored vehicles. Iran's intention is further demonstrated by angling the weapon in order to overcome Rhino [EFP countermeasure] devices. Doing so ensured that the EFP would hit the crew compartment, rather than the engine. Because these weapons deliver deadly force, ***the Court presumes that Iran's intent was to kill a vehicle's occupants***. In other words, the goal was to kill people, not just disable vehicles. Moreover, Iran wanted EFPs to be used against the U.S. military, which Iran saw as a threat to its objectives.

*Karcher*, 396 F. Supp. 3d at 56 (emphasis added, record citations omitted). As a result, the *Karcher* court concluded: "Deploying an EFP represents a 'deliberated' attempt to kill someone." *Id.* at 58.

Other courts have agreed. The court in *Roberts v. Islamic Republic of Iran* found that "attacks with EFPs—which wrought death upon many victims in Iraq—are attempted extrajudicial killings." 581 F. Supp. 3d 152, 170 (D.D.C. 2022).

5

Another court noted "expert testimony that EFPs were constantly retooled to overcome U.S. defenses that attempted to make EFPs less deadly, indicating that EFPs were intentionally designed to inflict maximum harm on their targets." *Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 492 (D.D.C. 2021). All of these cases explicitly permitted § 1605A claims premised on attempted killings.

These courts and many others have also found that Iran provided material support to orchestrate a campaign of murderous terrorism against U.S. forces through (1) the IRGC and the IRGC's foreign directorate, the Qods Force ("IRGC-QF"); (2) its Lebanese proxy, Hezbollah; and (3) its Iraqi Shi'a proxies:

> [T]he IRGC-QF spearheaded a closely coordinated campaign to equip the Shi'a militia for proxy warfare. That campaign is well attested to in U.S. Government documents. In 2007, the Qods Force earned its Treasury Department designation under E.O. 13224 in part because it "provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians." The State Department found that in 2011,
>
>> Iran was responsible for the increase of lethal attacks on U.S. forces [in Iraq] and provided militants with the capability to assemble explosives designed to defeat armored vehicles. The IRGC-QF, in concert with Lebanese Hizballah, provided training outside of Iraq as well as advisors inside Iraq for Shia militants in the construction and use of sophisticated improvised explosive device technology and other advanced weaponry.

*Karcher*, 396 F. Supp. 3d at 24 (record citations omitted).

6

## II. Medical and Military Advancements Are the Reason for Reduced Fatalities, Not Because the Attacks Were Less "Heinous."

Surviving a terrorist attack in Iraq is not an indicator that the attack was not meant to kill. Rather, survival was often a result of improved battlefield medicine which helped victims survive wounds that likely would have been fatal even a few years earlier. As the *Karcher* plaintiffs' expert, Dr. Shean Phelps, the former Senior Flight Surgeon for the Army's Special Forces in Iraq and Afghanistan, testified in that case, the U.S. military reduced the "died-of-wounds rate tremendously" during its time in Iraq. Crucial techniques included faster response times and better containment of blood loss. *See id.* at 61-63.

However, although the died-of-wounds rate dropped in Iraq during the 2004-2011 period, the survivable wounds from EFP were grievous. For example, *Karcher* plaintiff and *amicus* Staff Sergeant (Ret.) Robert Canine was in a vehicle hit by an EFP in Iraq on May 17, 2009. An EFP struck his vehicle on the passenger side, where he was seated. The "slug" (the EFP's projectile, a wad of copper weighing several pounds and traveling thousands of miles per hour) entered the vehicle and struck Mr. Canine's feet. *See id.* at 43. No one died, but the EFP slug ripped off his right leg and part of his left foot and caused other severe injuries. *Id.* Mr. Canine came close to dying from blood loss. *Id.* He was evacuated to a U.S. Air Force hospital in Balad, where he received massive transfusions of blood and plasma. *Id.* The quick response process and blood transfusions saved his life.

7

However, even years later, Mr. Canine's medical condition remains dire and his prognosis is grim. The blood transfusions resulted in him contracting Hepatitis C. Following several surgeries, Mr. Canine is a double leg amputee, and he continues to endure residual limb pain and problems with his prosthetics, often relegating him to a wheelchair. He suffers from PTSD, depression, hearing loss, headaches, and memory issues. An expert review of Mr. Canine's records noted Mr. Canine's chronic, trauma-induced degenerative arthritic conditions throughout his body and predicted that his orthopedic and musculoskeletal injuries will only gradually worsen with age. According to the review, Mr. Canine faces continued cognitive and neurobehavioral dysfunction, anxiety issues, and major depressive episodes, and his life expectancy is very likely to be foreshortened by a period of 20-40 years.

Mr. Canine's experience is but one of many similar tragedies suffered by the brave men and women serving our nation in Iraq because of Iranian terrorism designed to kill them. It is hard to imagine Congress intended Iran to enjoy immunity from attacks like these just because the victims managed to survive them, despite serious wounds.

## CONCLUSION

This Court should find that where a state sponsor of terrorism provides material support for the purpose of murdering Americans, it loses its immunity under 28 U.S.C. § 1605A(a)(1).

Dated: May 18, 2023

        Respectfully submitted,

        /s/ Peter Raven-Hansen
        Peter Raven-Hansen
        GEORGE WASHINGTON UNIVERSITY
        LAW SCHOOL
        Burns 411
        720 20th Street, NW
        Washington, District of Columbia 20052
        Tel: (202) 994-8171
        pravenhansen@gmail.com

        PERLES LAW FIRM, PC
        Steven R. Perles
        816 Connecticut Ave., NW, 12th Floor
        Washington, DC 20006
        Tel: (202) 955-9055

        *Attorneys for Amicus Curiae*

# APPENDIX A

Joshua Denman is a plaintiff in Stearns, et al. v. Islamic Republic of Iran, Case No. 17-cv-00131 (RCL) (D.D.C.). On December 20, 2006, Private First Class Denman was struck by an EFP while serving in Iraq, resulting in shrapnel injuries to his arm and hand. No one was killed in this attack.

Ryan Sabinish is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). On March 23, 2007, Specialist Sabinish was struck by an EFP while serving in Iraq, suffering a traumatic brain injury, shrapnel injuries to his right arm limiting its use, back, neck and leg pain, and PTSD. No one was killed in this attack.

Scott Lilley is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). On April 15, 2007, Staff Sergeant Lilley was struck by an EFP while serving in Iraq, suffering a traumatic penetrating brain injury requiring cranial decompression surgery and resulting in severely impaired cognitive functioning, along with degenerative lower back disc disease. No one was killed in this attack.

Christopher Levi is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). Specialist Levi was struck by an EFP while serving in Iraq, suffering a traumatic brain injury compounded by lack of oxygen supply, above-the-knee amputation of his right leg and through-the-knee amputation

of his left leg, partial traumatic amputation of his right hand and arm, and shrapnel injuries to both thighs, arms, and upper body. No one was killed in this attack. Walter Bailey is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). On March 30, 2008, Private First Class Bailey was struck by an EFP while serving in Iraq, suffering shrapnel injuries to his face, both arms and legs, and an amputation of his right great toe. No one was killed in this attack.

    Allen Swinton is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). On April 12, 2008, Sergeant Swinton was struck by an EFP while serving in Iraq, suffering traumatic brain injury symptoms and shrapnel injuries to his right arm and both legs. No one was killed in this attack. Wesley Williamson is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). On May 9, 2008, Private First Class Williamson was struck by an EFP while serving in Iraq, suffering traumatic brain injury symptoms, and severe shrapnel injuries to his right forearm. No one was killed in this attack.

    Robert Canine is a plaintiff in Karcher, et al. v. Islamic Republic of Iran, Case No. 16-cv-00232 (CKK) (D.D.C.). On May 17, 2009, Staff Sergeant Canine was struck by an EFP while serving in Iraq, suffering below-the-knee amputation of both legs, traumatic brain injury symptoms, a left tibia fracture, laceration from his left

knee to left buttocks, left shoulder dislocation, and massive blood loss requiring transfusions with Hepatitis C-contaminated blood. No one was killed in this attack.

Randolph Delbert Nantz is a plaintiff in Burks v. Islamic Republic of Iran, No. 16-cv-1102 (CRC) (D.D.C.). On December 22, 2006, Sergeant First Class Nantz was struck by an EFP while serving in Iraq. The EFP's slug tore through his body, causing third-degree burns over 22% of his body, large muscle tissue loss, severe nerve damage, and the amputation of his left leg below the knee. No one was killed in this attack.

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 28(a)(10), I hereby certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the portions of this Brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), this Brief contains 1,495 words. This word count was made by use of the word count feature of Microsoft Word, which is the word processor used to prepare this Brief.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. Proc. 32(a)(6).

/s/ Peter Raven-Hansen
*Attorneys for Amici Curiae*
