**[REARGUMENT SCHEDULED FOR SEPTEMBER 29, 2023]**

**No. 22-7058**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

ELI M. BOROCHOV, et al.,

Plaintiffs-Appellees,

SHARI MAYER BOROCHOV, et al.,

Plaintiffs-Appellants,

v.

ISLAMIC REPUBLIC OF IRAN; SYRIAN ARAB REPUBLIC,

Defendants-Appellees.

---

On Appeal from the United States District Court
for the District of Columbia

---

## REPLY BRIEF FOR THE UNITED STATES AS AMICUS CURIAE

---

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

SHARON SWINGLE
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................ii

ARGUMENT ......................................................................................................1

Section 1605A(a)(1) Creates an Exception to Immunity Only
    Where a Predicate Act Actually Occurs ............................................1

CONCLUSION .................................................................................................9

# TABLE OF AUTHORITIES

**Cases:**                                                                                       **Page(s)**

*Boim v. Holy Land Found. for Relief & Dev.,*
    549 F.3d 685 (7th Cir. 2008) ...................................................................... 6

*Force v. Islamic Republic of Iran,*
    610 F. Supp. 3d 216 (D.D.C. 2022) ...................................................... 8

*Kilburn v. Socialist People's Libyan Arab Jamahiriya,*
    376 F.3d 1123 (D.C. Cir. 2004) ....................................................... 5, 6

*Owens v. Republic of Sudan,*
    864 F.3d 751 (D.C. Cir. 2017), *vacated and remanded*
    *on other grounds sub nom. Opati v. Republic of Sudan,*
    140 S. Ct. 1601 (2020) ...................................................... 2, 4, 5, 6, 7

*Sissel v. U.S. Dep't of Health & Human Servs.,*
    799 F.3d 1035 (D.C. Cir. 2015) ........................................................ 3

**Statute:**

28 U.S.C. § 1605A(a)(1) ...................................................................... 1, 2

**Other Authorities:**

*For*:
    American Heritage Dictionary (3d ed. 1994) ...................................... 3
    American Heritage Dictionary (3d ed. 1996) ....................................... 3

The United States respectfully submits this reply as requested by the Court's July 28, 2023 order.

## ARGUMENT

### SECTION 1605A(A)(1) CREATES AN EXCEPTION TO IMMUNITY ONLY WHERE A PREDICATE ACT ACTUALLY OCCURS

28 U.S.C. § 1605A(a)(1) provides a limited exception to the presumption of foreign state immunity "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." As we explained in answer to the Court's first question, an attempted extrajudicial killing does not qualify as an "extrajudicial killing," and a plaintiff injured in an attempt cannot demonstrate that their injury was "caused by an act of … extrajudicial killing." Br. 2-4. The district court correctly held as much. A587; *accord* Ct.-App't. Amicus Suppl. Resp. Br. 2. Plaintiffs offer no apparent response, aside from the uncontroversial assertion that the exception applies to both the state's own direct acts and the state's material support for the acts of others. Suppl. Resp. Br. 1-2. But plaintiffs provide no textual basis for applying the exception to an attempted extrajudicial killing the state carries out directly.

The same principle applies to the Court's second question: Section 1605A(a)(1)'s exception to immunity does not become applicable because an attempted extrajudicial killing is carried out by a non-state actor making use of the state's material support.  As we explained, providing material support "for such an act" refers back to the enumerated acts to which the exception applies: "an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking."  28 U.S.C. § 1605A(a)(1); Br. 5.  Moreover, this Court has held that the requirement that an injury be "caused by … the provision of material support or resources for such an act" requires a showing that the state's material support was a "proximate cause" of the predicate act that injured the plaintiff.  *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (quotation omitted), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).  If the predicate act never occurs, then the state's material support could not have proximately caused such act.

Plaintiffs and court-appointed amicus resist the conclusion that a victim's injury or death must result from a predicate act for the exception to immunity to apply.  Plaintiffs, court-appointed amicus, and

2

the district court all rely on a dictionary definition that equates the term "for" with "object or purpose." A589 (quoting *For*, American Heritage Dictionary (3d ed. 1994)). From this definition, the district court concluded that the exception applies if the state provides material support with the "intention or objective" that an extrajudicial killing (or other predicate act) occur, regardless of whether a predicate act actually occurs. A589.

That reading cannot be squared with the remainder of the statute or this Court's precedents. The meaning of the term "for" is context-dependent and need not indicate intent or purpose; the same dictionary observes that the word can be "[u]sed to indicate the recipient or beneficiary of an action." *For*, American Heritage Dictionary (3d ed. 1996); *cf. Sissel v. U.S. Dep't of Health & Human Servs.*, 799 F.3d 1035, 1043 (D.C. Cir. 2015) (en banc) (Rogers, Pillard, and Wilkins, JJ., concurring) (addressing the meaning of "[t]he word 'for' *in this context*" (emphasis added)). The term thus relates to the beneficiary of the state's material support: the enumerated "act" that provides jurisdiction. Without an extrajudicial killing or other predicate act, the material support was not provided "for such an act."

3

That reading also follows from *Owens*, where this Court specifically rejected the argument "that the use of 'for' with reference to 'the provision of material support' indicates that the FSIA 'requires a showing of intent' on the part of the foreign sovereign to achieve the predicate act," explaining that "[n]othing in the FSIA … requires a greater showing of intent than proximate cause."  864 F.3d at 798.  The response briefs emphasize that the state defendant in *Owens* argued that plaintiffs were required to demonstrate that the state intended to support the specific predicate acts at issue (there, the 1998 bombings of two U.S. embassies in East Africa), rather than requiring a showing that the state had the intention or objective that its material support would lead to (unspecified) predicate acts.  Ct.-App't Amicus Suppl. Resp. Br. 4-5; Pls.' Suppl. Resp. Br. 2-3.  But *Owens* addressed the appropriate jurisdictional standard, and was emphatic that no inquiry into a state's intent to support the predicate act that caused the victim's ultimate injury or death was necessary under the exception.  Had the Court believed that the term "for" imposed some obligation to inquire into a state's "object or purpose" in providing the support, it would have had every reason to say so.

4

As this Court recognized, requiring examination of a state's intent or purpose would prevent suits by some individuals who *were* the victims of extrajudicial killings (not just attempts).  For example, if a state provided only general support to a terrorist group, with no "intention or objective" that the terrorist group carry out any predicate acts, the material support would not qualify as "for" the extrajudicial killings on this intent-based approach.  *See Owens*, 864 F.3d at 799 ("[R]equiring more than proximate cause 'could absolve' a state from liability when its actions significantly and foreseeably contributed to the predicate act."  (quoting *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1129 (D.C. Cir. 2004))).  Or a state could provide support with the "intention or objective" that a terrorist group engage in acts not covered by the exception, such as non-lethal attacks against infrastructure or social welfare programs or charitable projects that the group undertakes concurrently with its terrorist activities.  Here, too, if a terrorist group used the material support to instead engage in an extrajudicial killing, the victim would be unable to invoke the exception.  But as this Court observed, "material support 'is fungible' and 'terrorist organizations can hardly be counted on to keep

5

careful bookkeeping records,'" and "[t]o require proof that [a defendant] *intended* that his contribution be used for terrorism ... would as a practical matter eliminate ... liability except in cases in which the [defendant] was foolish enough to admit his true intent."  *Id.* (first quoting *Kilburn*, 376 F.3d at 1130; and then quoting *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698-99 (7th Cir. 2008) (en banc)).

These concerns are manifested in plaintiffs' assertion that victims could demonstrate a state's purpose by pointing to "[t]he specific nature of the support" provided, such as "evidence that Iran paid Hamas for bombings" or that Iran provided weapons capable of deadly force. Suppl. Resp. Br. 4; *see* A589-90; Ct.-App't Amicus Suppl. Resp. Br. 3 & n.1.  That only underscores the difficulties that would confront plaintiffs invoking the exception where the material support takes far more general—and more fungible—forms.  *See, e.g.*, *Owens*, 864 F.3d at 782-84 (outlining support such as partnering on "major infrastructure projects," granting "'customs exemptions' and 'tax privileges,'" allowing use "of [the state's] banking system" for "laundering money" and other

transactions, aiding travel, transferring weapons, and providing

passports and domestic security).

On a slightly different tack, plaintiffs suggest that the term "for"

could be understood to require examining "the objective features" of the

state's conduct to ascertain the state's purpose, without considering the

state's "intent." Suppl. Resp. Br. 3 (quoting *Owens*, 864 F.3d at 798).

Plaintiffs make little effort to explain how a state's "object or purpose"

in providing material support could be different from its "intent" in this

context. Even on its own terms, however, this approach fails. Plaintiffs

propose that purpose can be inferred where the state "knowingly

provided" material support "to a terrorist organization notorious for

committing acts of terrorism that often cause deaths." Suppl. Resp. Br.

3-4. But that inquiry would simply parallel the proximate cause

standard, which already requires that the predicate act be "reasonably

foreseeable or anticipated as a natural consequence of the defendant's

conduct," *Owens*, 864 F.3d at 794 (quotation omitted), and thus

considers whether the defendant state provided the support through a

group whose "terrorist aims were foreseeable," *id.* at 797-98.

On that view, "for" would serve only to decouple the material support from the predicate acts identified in the statute, converting § 1605A(a)(1) into a general-purpose tort statute for the torts of terrorist organizations. If a state provided support for a terrorist group that it knew sometimes committed predicate acts, *any* foreseeable injury caused by that group would fall within the exception, regardless of whether that injury was related to a predicate act. *Force v. Islamic Republic of Iran*, 610 F. Supp. 3d 216, 225 (D.D.C. 2022). But § 1605A(a)(1) creates an exception to immunity for "the provision of material support or resources for *such an act*" (emphasis added), not "the provision of material support to a terrorist organization," *Force*, 610 F. Supp. 3d at 225.

## CONCLUSION

The district court lacked jurisdiction over these claims.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

SHARON SWINGLE

  */s/ Brad Hinshelwood*
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-7823*

September 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's July 28, 2023 order because it contains 1,500 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD