No. 22-7058

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

ELI M. BOROCHOV, ET AL.,

*Plaintiffs-Appellees*,

SHARI MAYER BOROCHOV, ET AL.,

*Plaintiffs-Appellants*,

*v.*

ISLAMIC REPUBLIC OF IRAN AND SYRIAN ARAB REPUBLIC

*Defendants-Appellees.*

On Appeal From The United States District Court For The District Of Columbia
Case No. 1:19-cv-02855, District Judge Trevor N. McFadden

## PETITION FOR REHEARING EN BANC

Robert J. Tolchin
THE BERKMAN LAW OFFICE, LLC
829 East 15th Street, Box 7
Brooklyn, New York 11230
(718) 855-3627
rtolchin@berkmanlaw.com

Michael J. Radine
OSEN LLC
190 Moore St., Suite 272
Hackensack, NJ 07601
(201) 265-6400
mradine@osenlaw.com

April 8, 2024

Matthew D. McGill
Aaron Hauptman
Samuel C. Speers
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mmcgill@gibsondunn.com

*Attorneys for Plaintiffs Eli M. Borochov,
et al.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... ii

RULE 35(b) STATEMENT AND INTRODUCTION ............................................1

BACKGROUND ....................................................................................2

REASONS FOR GRANTING REHEARING EN BANC ......................................5

    I.     The Panel's Misinterpretation Of The Terrorism Exception
            Undermines Its Purpose.........................................................5

           A.    Extinguishing The Claims Of Victims Of Non-Fatal
                  Terrorist Attacks Undermines The Terrorism Exception's
                  Purpose. .....................................................................5

           B.    This Court Should Adopt A Reasonable Reading Of The
                  Statute That Supports, Rather Than Undermines, Its
                  Purpose. .....................................................................7

    II.    As The Predominant Interpreter Of This Statute, This Court
            Should Act On This Exceptionally Important Issue. .........................15

CONCLUSION...................................................................................17

**ADDENDUM**

Exhibit 1:  Panel Order

Exhibit 2:  Certificate As To Parties

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abramski v. Untied States*,
573 U.S. 169 (2014)..........................................................................8

*Asemani v. Islamic Republic of Iran*,
2018 WL 3036654 (N.D. Cal. June 18, 2018)..................................16

*Boim v. Holy Land Found. for Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) ...........................................................10

*Borochov v. Islamic Republic of Iran*,
589 F. Supp. 3d 15 (D.D.C. 2022)................................................3, 4, 8

*Borochov v. Islamic Republic of Iran*,
94 F.4th 1053 (D.C. Cir. 2024)...................2, 3, 4, 9, 10, 11, 12, 13

*Braun v. United States*,
31 F.4th 793 (D.C. Cir. 2022).............................................................6

*Burks v. Islamic Republic of Iran*,
2022 WL 20588923 (D.D.C. Sept. 30, 2022) ...............................3, 14

*Cabrera v. Islamic Republic of Iran*,
2023 WL 1975091 (D.D.C. Jan. 27, 2023).......................3, 9, 12, 15

*Doe v. Bin Laden*,
663 F.3d 64 (2d Cir. 2011) .................................................................6

*Federal Republic of Germany v. Philipp*,
592 U.S. 169 (2021)..........................................................................13

*Fissler v. Islamic Republic of Iran*,
2022 WL 4464873 (D.D.C. Sept. 26, 2022) ...............................3, 14

*Force v. Islamic Republic of Iran*,
610 F. Supp. 3d 216 (D.D.C. 2022)....................................................3

*Gill v. Islamic Republic of Iran*,
249 F. Supp. 3d 88 (D.D.C. 2017)................................................3, 12

*Han Kim v. Democratic People's Republic of Korea*,
    774 F.3d 1044 (D.C. Cir. 2014) ....................................................................5, 11

*Herrick v. Islamic Republic of Iran*,
    2022 WL 3443816 (S.D. Tex. Aug. 17, 2022) ...............................................16

*Karcher v. Islamic Republic of Iran*,
    396 F. Supp. 3d 12 (D.D.C. 2019) ...............................................................6, 13

*Lee v. Islamic Republic of Iran*,
    518 F. Supp. 3d 475 (D.D.C. 2021) .............................................................3, 14

*Maloney v. Carnahan*,
    45 F.4th 215 (D.C. Cir. 2022) ..........................................................................16

*Owens v. Republic of Sudan*,
    864 F.3d 751 (D.C. Cir. 2017) ...................................................................6, 9, 10

*Pautsch v. Islamic Republic of Iran*,
    2023 WL 8433216 (D.D.C. Dec. 5, 2023) ........................................................3

*Roberts v. Islamic Republic of Iran*,
    581 F. Supp. 3d 152 (D.D.C. 2022) .............................................................3, 14

*Salzman v. Iran*,
    2019 WL 4673761 (D.D.C. Sept. 25, 2019) ....................................................14

*Simon v. Republic of Iraq*,
    529 F.3d 1187 (D.C. Cir. 2008) .......................................................................17

*Stearns v. Islamic Republic of Iran*,
    633 F. Supp. 3d 284 (D.D.C. 2022) ................................................................14

*Taitt v. Islamic Republic of Iran*,
    664 F. Supp. 3d 63 (D.D.C. 2023) ....................................................................6

*Van Beneden v. Al-Sanusi*,
    709 F.3d 1165 (D.C. Cir. 2013) ........................................................1, 5, 6, 7, 12

*Villoldo v. Republic of Cuba*,
    659 F. Supp. 3d 1158 (D. Colo. 2023) .............................................................17

**Statutes**

28 U.S.C. §1350 Note ...........................................................................14

28 U.S.C. §1391............................................................................2, 16

28 U.S.C. §1605A...............................2, 3, 7, 8, 9, 10, 11, 12, 13, 14, 16

28 U.S.C. §1608...................................................................................3

**Other Authorities**

Am. Heritage Dictionary (3d ed. 1994) ..................................................8

Casualty Status, Dep't of Defense (Feb. 13, 2024),
    https://www.defense.gov/casualty.pdf ...............................................15

H.R. Rep. 104-383 (1995) .................................................................5, 7

*Terrorist Groups As Proxies*, American University School of
    International Service (Feb. 5, 2024), https://bit.ly/3J4SW14............................10

## RULE 35(B) STATEMENT AND INTRODUCTION

This case addresses the critically important question whether the Foreign Sovereign Immunities Act's ("FSIA's") terrorism exception extends jurisdiction to claims arising from state-sponsored terrorist attacks in which all injured victims survived. The district court below concluded that it does, joining six other judges in this district in a line of cases stretching back seven years. But a panel of this Court reversed, holding that whether an injured victim of a terrorist attack can sue turns on the arbitrary fact of whether another victim died in the attack. That decision shuts the courthouse doors to numerous victims of terrorist attacks, including many U.S. servicemembers that were grievously injured or even permanently disabled, simply because those attacks failed to kill anyone.

No one seriously suggests that Congress intended such an incongruous result, and the terrorism exception's text does not require it. Before this decision, this Court "interpret[ed] [the terrorism exception's] ambiguities flexibly and capaciously" in light of its purpose of "lighten[ing] the jurisdictional burdens borne by victims of terrorism seeking judicial redress." *Van Beneden v. Al-Sanusi,* 709 F.3d 1165, 1167 & n.4 (D.C. Cir. 2013). But apparently no longer. By declining to read the statute to establish jurisdiction over cases brought by victims whose injuries were proximately caused by a state sponsor of terrorism's material support intended to

effectuate extrajudicial killings, this Court embraced a "narrow[]" reading. *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053, 1065 (D.C. Cir. 2024).

This Circuit—which, due to 28 U.S.C. § 1391(f)'s venue provision, is the primary interpreter of the terrorism exception—should grant rehearing en banc to clarify that, per *Van Beneden*, the terrorism exception must be interpreted "capaciously"; to correct the panel's unduly restrictive jurisdictional holding; and to restore to injured victims of non-fatal attacks the pathway to recovery that Congress opened to them in the FSIA.

## BACKGROUND

This case was brought by Yoav and Rotem Golan, victims of a terrorist attack, and their family members. Yoav and Rotem were "badly injured" when a terrorist "acting on behalf of … Hamas" deliberately rammed his car into 14 people at a bus stop in Jerusalem. *Borochov*, 94 F.4th at 1057-58. The terrorist was shot before he could retrieve an axe in his car that he "likely intended to use against those at the bus stop." *Id.* at 1058 (internal quotation marks omitted). Fortunately, every victim survived.

The Golans and their family members sued two of Hamas's patrons, the Islamic Republic of Iran ("Iran") and the Syrian Arab Republic ("Syria") under the FSIA's terrorism exception, 28 U.S.C. § 1605A. Through that provision, Congress withdrew sovereign immunity from designated state sponsors of terrorism in suits

seeking "damages … for personal injury or death that was caused by an act of …

extrajudicial killing" or by the foreign sovereign's "provision of material support or

resources for such an act." 28 U.S.C. § 1605A(a)(1). Yoav (an American Citizen)

and his American family members sued under the FSIA's cause of action for U.S.

citizens, Section 1605A(c); Rotem and the Golans' Israeli family members sued

under D.C. law, under whose choice-of-law rules Israeli law applied. *Borochov*, 94

F.4th at 1058-59.

In ruling on the Golans' motion for default judgment under 28 U.S.C.

§ 1608(e), the district court considered whether it had jurisdiction over the Golans'

claims even though no one died in the attack that injured them. The court held that

it had jurisdiction, becoming the seventh court in this District to so find, and

disagreeing with two colleagues.[1] The court reasoned that "[t]he FSIA waives

sovereign immunity for injuries caused by 'material support *for*' an extrajudicial

killing," and that material support can be "for" an extrajudicial killing, and cause

---

[1] *Compare Borochov v. Islamic Republic of Iran*, 589 F. Supp. 3d 15, 32 (D.D.C. 2022) (McFadden, J.); *Pautsch v. Islamic Republic of Iran*, 2023 WL 8433216, at *3 (D.D.C. Dec. 5, 2023) (Boasberg, C.J.); *Cabrera v. Islamic Republic of Iran*, 2023 WL 1975091, at *4-11 (D.D.C. Jan. 27, 2023) (Bates, J.); *Fissler v. Islamic Republic of Iran*, 2022 WL 4464873, at *5 (D.D.C. Sept. 26, 2022) (Kollar-Kotelly, J.); *Roberts v. Islamic Republic of Iran*, 581 F. Supp. 3d 152, 169-70 (D.D.C. 2022) (Lamberth, J.); *Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 491-92 (D.D.C. 2021) (Mehta, J.); *Gill v. Islamic Republic of Iran*, 249 F. Supp. 3d 88, 98-99 (D.D.C. 2017) (Walton, J.) *with Force v. Islamic Republic of Iran*, 610 F. Supp. 3d 216, 222 (D.D.C. 2022) (Moss, J.); *Burks v. Islamic Republic of Iran*, 2022 WL 20588923, at *9-10 (D.D.C. Sept. 30, 2022) (Cooper, J.).

"personal injury," even if the terrorist's effort to perpetrate an extrajudicial killing ultimately is unsuccessful. *Borochov*, 589 F. Supp. 3d at 32.

The district court, satisfied that Iran and Syria materially supported Hamas and thus proximately caused the Golans' injuries, granted default judgment and awarded Yoav, Rotem, and their American family members damages. *Borochov*, 589 F. Supp. 3d at 31-34, 35-40, 44-47. But the court denied the Israeli family members' claims, holding that they did not establish their entitlement to damages under Israeli law. *Id.* at 47.

Those family members appealed. After requesting supplemental briefing on subject-matter jurisdiction, the panel concluded that "because the attacker in this case (fortunately) did not kill anyone, the attack that caused Rotem and Yoav's injuries was not an 'extrajudicial killing,'" and therefore the FSIA's terrorism exception did not apply. *Borochov*, 94 F.4th at 1057. That holding adopted a reading of the terrorism exception that a clear majority of district judges have rejected, and left numerous victims of terrorist attacks—including both injured soldiers and civilians like Rotem and Yoav—without recourse against the states that sponsored the attacks.

# REASONS FOR GRANTING REHEARING EN BANC

## I. The Panel's Misinterpretation Of The Terrorism Exception Undermines Its Purpose.

Before the panel's decision, this Court was clear that because of the terrorism exception's important purpose of easing "the jurisdictional burdens borne by victims of terrorism seeking judicial redress," any ambiguities found therein should be interpreted in favor of the victim. *Van Beneden*, 709 F.3d at 1167 n.4. Consistent with that precedent, the panel could have adopted one of several reasonable interpretations of the text that fulfills the terrorism exception's purpose by permitting the plaintiffs—injured victims of a terrorist attack—to hold Iran and Syria accountable for their support of that attack. Instead, it adopted a crabbed reading that yields a result so arbitrary it cannot possibly be what Congress intended.

### A. Extinguishing The Claims Of Victims Of Non-Fatal Terrorist Attacks Undermines The Terrorism Exception's Purpose.

The terrorism exception exists to "prevent state sponsors of terrorism—entities particularly unlikely to submit to this country's laws—from escaping liability for their sins." *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C. Cir. 2014). Congress recognized that "outlaw states consider terrorism a legitimate instrument [for] achieving their foreign policy goals," and thus authorized suits "against countries responsible for terrorist acts where Americans and/or their loved ones suffer injury or death at the hands of [a] terrorist state." H.R.

Rep. 104-383, at 62 (1995).  This unique provision reflects Congress's recognition that "American citizens who have been aggrieved by any state sponsor of terrorism deserve every possible means of redress available to them."  *Van Beneden*, 704 F.3d at 1167-68 n.4 (citation and quotation marks omitted).

In light of this clear Congressional intent, this Court has recognized that the "text, history, and purpose of the [terrorism exception] make clear that the statute does not counsel a narrow reading," and has instructed district courts to "interpret its ambiguities flexibly and capaciously."  *Van Beneden*, 709 F.3d at 1167 & n.4 (quoting *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011)).

In part because of that instruction, the terrorism exception has functioned largely as intended:  Victims have obtained judgments against state sponsors of terrorist attacks ranging from embassy bombings, *Owens v. Republic of Sudan*, 864 F.3d 751 (D.C. Cir. 2017), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 590 U.S. 418 (2020), to attacks on U.S. naval ships, *Taitt v. Islamic Republic of Iran*, 664 F. Supp. 3d 63 (D.D.C. 2023), to attacks by Iran-backed militias on troops in Iraq, *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12 (D.D.C. 2019).  In this way, victims (including those injured in attacks in which all victims survived) have been able to claim some measure of compensation, either by attaching assets traceable to terrorist owners or by applying for

disbursements from the U.S. Victims of State Sponsored Terrorism Fund. *See Braun v. United States*, 31 F.4th 793, 794-95 (D.C. Cir. 2022) (discussing Victims Fund).

The panel's decision undermines the statute's purpose by eliminating the only means of redress available to victims of attacks that happen to prove non-fatal. Now, whether an injured victim of a terrorist attack can bring a claim depends on whether a *different* victim of the attack died, regardless of the assailants' intent or the severity of the injuries they inflict. There is no conceivable reason that Congress, which enacted the terrorism exception "to protect the lives *and safety* of its citizens," H.R. Rep. 104-383, at *38 (emphasis added), and enabled suits for "*personal injury or death*," 28 U.S.C. § 1605A(a) (emphasis added), would have limited jurisdiction to claims arising from attacks in which a victim died. Nor could Congress have intended to *reward* state sponsors of terrorism for the advances in battlefield medicine that have saved the lives of so many of their victims. *See* Supp. Amicus Br. of U.S. Veterans at 3-4.

## B. This Court Should Adopt A Reasonable Reading Of The Statute That Supports, Rather Than Undermines, Its Purpose.

This Court has long recognized that the terrorism exception cannot be read "narrow[ly]," and that its ambiguities should be interpreted "flexibly and capaciously," in line with its purpose. *Van Beneden*, 709 F.3d at 1167 & n.4. That holding follows the Supreme Court's instruction to "interpret the relevant words [of a statute] not in a vacuum, but with reference to the statutory context, structure,

history, and purpose." *Abramski v. Untied States*, 573 U.S. 169, 179 (2014) (internal quotation marks omitted). In rejecting reasonable readings of the statute that support Congress's plain and undisputed purpose—including its best reading—the panel failed to do that, creating an intra-circuit split over whether the terrorism exception should be read "capaciously" or "narrowly."

1. The district court's reading of the statute was correct: the terrorism exception extends jurisdiction to cases based on material support "for" an extrajudicial killing, even when the terrorist's effort to kill is unsuccessful.

The terrorism exception confers jurisdiction over suits seeking "damages … for personal injury or death that was caused by an act of … extrajudicial killing … *or* the [foreign sovereign's] provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1) (emphasis added). The district court correctly recognized that "a foreign state's support [of a terrorist group] with the object or purpose of an extrajudicial killing constitutes support 'for such an act' under [Section 1605A(a)(1)]," even if all victims survive. 589 F. Supp. 3d at 32. The word "for" can point not only to the completed result of an activity, but also to that activity's "object or purpose," as both dictionary definitions and ordinary usage confirm: "One dresses 'for' dinner or studies 'for' an exam even if the dinner or exam never occurs." *Id.* (citing Am. Heritage Dictionary 329 (3d ed. 1994)); *see*

*also Cabrera*, 2023 WL 1975091, at *7 (concluding that this is the "more natural reading").

In context, it is clear that providing material support "for" extrajudicial killing means supporting a terrorist group with the general object or purpose of causing extrajudicial killings. The terrorism exception imposes liability both for committing terrorist attacks and for materially supporting them. 28 U.S.C. § 1605A(a). "Unlike the direct-causation prong, the material-support prong does not ask whether the plaintiff's injury was caused by *an act of extrajudicial killing*. Instead, it is the defendant's act of *providing support* that triggers liability under this prong, not the character of the attack that directly caused the injury." *Cabrera*, 2023 WL 1975091, at *7. This Court explained in *Owens* that the "material support" required for liability need not "go directly for the specific act." 864 F.3d at 799 (internal quotation marks omitted). In this context, it is clear that materially supporting "such an act" means supporting "an act like the aforementioned acts," and not the literal act that injured the plaintiffs. Thus, the statute encompasses terrorist attacks carried out *for the purpose of* extrajudicial killing.

The panel's reasons for rejecting this reading are flawed. First, the panel worried that "the district court's reading would broadly expand Congress's waiver of sovereign immunity to include not just attempted-but-failed killings, but also providing advance funding for attacks that never occur at all." *Borochov*, 94

F.4th 1065. But Section 1605A(a)(1) only confers jurisdiction over claims for "personal injury or death," which would not arise from a wholly unexecuted attack.

Second, the panel believed that this "reading would write an illogical asymmetry" into the terrorism exception, because state sponsors of terrorism could be sued for supporting someone else's attempted extrajudicial killing, but not for their own. *Borochov*, 94 F.4th 1065. But that policy choice is perfectly reasonable in light of the reality that state sponsors of terrorism commonly fund terrorist groups to maintain "plausible deniability when these groups use violence while maintaining the power to have them operate in" their interest, even when those states only rarely commit acts of terror directly. Nicole Hassenstab, *Understanding Iran's Use of Terrorist Groups As Proxies*, American University School of International Service (Feb. 5, 2024), https://bit.ly/3J4SW14.

Third, the panel expressed concern that such a reading would embroil courts in "challenging factual inquiries" about "a foreign government's subjective intent in providing weapons or money to terrorist groups." *Borochov*, 94 F.4th at 1065. But under this Court's caselaw, knowingly supporting a terrorist group is enough to establish a state's objective intent to support extrajudicial killing. *Owens*, 864 F.3d at 799 ("[N]either specific intent nor direct traceability [is required] to establish the liability of material supporters of terrorism."); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 698 (7th Cir. 2008) ("Anyone who knowingly

contributes to the nonviolent wing of an organization that he knows to engage in terrorism is knowingly contributing to the organization's terrorist activities. And that is the only knowledge that can reasonably be required as a premise for liability.").

Moreover, this Court has recognized, in the context of the terrorism exception, that it has "the authority—indeed … the obligation—to adjust evidentiary requirements to differing situations." *Han Kim*, 774 F.3d at 1048 (citation and alterations omitted). For example, under "the long-established, common-law rule of *res ipsa loquitur*," "courts have, without direct proof, inferred negligence from the very nature of events." That rule squarely applies here: In light of "Congress's purpose" in enacting the terrorism exception, "where a plaintiff has produced compelling, admissible evidence" that the state sponsor of terrorism materially supported a terrorist organization that "routinely" commits extrajudicial killings, "courts can assume" that the sovereign's object and purpose was to support such killing. *Id.* at 1049.

Finally, the panel expressed confusion about how a court could make the requisite findings about facts at "the time the act" occurred if the "relevant 'act'" is "material support." *Borochov*, 94 F.4th at 1066 (discussing 28 U.S.C. § 1605A(a)(2)). But the "act" in Section 1605A(a)(2) is the terrorist attack itself;

paragraph (a)(2) refers to "the act described in paragraph (1)," which refers only to "material support … for such an act."  28 U.S.C. § 1605A(a)(1)-(2).

A material-support claim thus involves a simple "two-step inquiry": "(1) did the defendant nation provide material support or resources 'for' the purpose of bringing about acts of extrajudicial killing," as evidenced by their funding a terrorist group that regularly commits such acts, and "(2) if so, was that provision of material support the proximate cause of the plaintiff's personal injury or death?"  *Cabrera*, 2023 WL 1975091, at *8.  That reading flows naturally from the terrorism exception's text *and* supports its purpose.

At minimum, it is a reasonable reading of the statute.  Even the panel acknowledged the "ambiguity" resulting from the fact that "'for' can denote an 'intended goal,' as in saving for college."  *Borochov*, 94 F.4th at 1064-65.  Yet the panel declined to follow *Van Beneden*'s instruction to construe that ambiguity "flexibly and capaciously" in line with the FSIA's remedial "purpose," reasoning that *Van Beneden* itself concerned the scope of the terrorism exception's statute of limitations, which has since been deemed non-jurisdictional.  *Borochov*, 94 F.4th at 1062.  But as *Van Beneden* recognized, the FSIA is fundamentally a jurisdictional statute, and the terrorism exception's overarching statutory purpose is to "lighten the jurisdictional burdens borne by victims of terrorism seeking judicial redress."  709 F.3d at 1167 n.4.  This Court in *Van Beneden* understood its "flexibl[e]"

interpretation of Section 1605A(b)'s limitations period to be in line with that purpose.

The panel justified its split with *Van Beneden* by citing concerns that a broad interpretation of the FSIA's jurisdictional provisions might "produc[e] friction in our relations with other nations." *Borochov*, 94 F.4th 1065 (quoting *Federal Republic of Germany v. Philipp*, 592 U.S. 169, 184, (2021) (alterations omitted). That concern is all but irrelevant to the FSIA's terrorism exception, which applies only to foreign governments designated by the Executive as state sponsors of terrorism, 28 U.S.C. § 1605A(a)(2)(A)(i)(I). That designation reflects the Executive's judgment that diplomatic relations are at their nadir, and strongly suggests that those relations would not be materially affected by the Court's resolution of an ambiguity in the FSIA in favor of victims of terrorism.

**2.** Wholly apart from the interpretation *supra* of scope of the prohibition of material support, the terrorism exception also reasonably can be read to include attempted extrajudicial killings. The panel decided that there was "no relevant ambiguity" that would allow that reading, but district courts have identified at least two ambiguities that could be read to include attempted extrajudicial killings. *Borochov*, 94 F.4th at 1062.

First, courts have construed "deliberated killing" to encompass "injuries resulting from 'deliberated' attempts to kill." *Karcher*, 396 F. Supp. 3d at 55; *see*

*also Lee*, 518 F. Supp. 3d at 491-92 (holding that "causing or attempting to cause death by detonating an EFP constitutes a deliberated killing"); *Burks*, 2022 WL 20588923, at *8; *Stearns v. Islamic Republic of Iran*, 633 F. Supp. 3d 284, 347 (D.D.C. 2022); *Roberts*, 581 F. Supp. 3d at 170. The FSIA defines "extrajudicial killing" (by reference to the Torture Victims Protection Act) as "a deliberated killing not authorized by a previous judgment" of a legitimate court or "carried out under the authority of a foreign nation." 28 U.S.C. §§ 1605A(h)(7), 1350 Note at 3(a). Based on the statute's text and purpose, courts have held that Congress did not intend to require victims to "demonstrate fatalities in each attack, but rather that each attack was 'undertaken with careful consideration, not on a sudden impulse,' to inflict fatalities." *Fissler*, 2022 WL 4464873, at *5 (quoting *Salzman v. Iran*, 2019 WL 4673761, at *13 (D.D.C. Sept. 25, 2019)).

Second, courts have observed that the terrorism exception's phrase "*act of extrajudicial killing*" could evidence Congress' intent to permit claims arising from attempted killings. *See Roberts*, 581 F. Supp. 3d at 169-70 (emphasis added). "Plausibly read, § 1605A(a)(1) could encompass (1) the specific deed of an extrajudicial killing or (2) the process of committing an extrajudicial killing," the latter of which "does not imply that death results." *Id.* at 170.

Under *Van Beneden*, both of those ambiguities should be construed in light of the FSIA's purpose.

* * *

In sum, "[e]very judge in this District to consider this issue prior to 2022—and several who addressed it [since]—has concluded that the material-support prong of the terrorism exception extends to injuries caused by a defendant nation's material support for a nonfatal, attempted extrajudicial killing." *Cabrera*, 2023 WL 1975091, at \*4. The panel's contrary conclusion warrants reconsideration by the full Court.

## II. As The Predominant Interpreter Of This Statute, This Court Should Act On This Exceptionally Important Issue.

The panel's decision will impact numerous victims of terrorist attacks. In one case alone, the undersigned counsel represents victims injured in more than three hundred terrorist attacks, and their immediate family members, whose claims are extinguished by the panel decision. *See* Amended Complaint at 82-367, *Heaton v. Islamic Republic of Iran*, No. 19-cv-3003 (D.D.C. Jan. 29, 2021).

The terrorism exception plays a particularly important role in protecting members of the armed forces. Servicemembers risk their lives protecting American interests in places where they are vulnerable to attack by state-sponsored terrorist groups. The Department of Defense has estimated that over 50,000 servicemembers were wounded in Iraq and Afghanistan, in large part due to Iran's support for terrorist groups in the region. *See* https://www.defense.gov/casualty.pdf. Congress recognized the importance of protecting servicemembers by establishing jurisdiction and creating a cause of action where "the claimant or the victim" of a terrorist attack

was "a member of the armed forces." 28 U.S.C. § 1605A(a)(2)(A)(ii)(II), (c)(2). Whether Congress intended to refuse relief to those wounded soldiers is a question that deserves the full Court's attention.

It is particularly important that the full Court decides this issue "because the D.C. Circuit has an effective monopoly over lawsuits" brought against state sponsors of terrorism. *Maloney v. Carnahan*, 45 F.4th 215, 221 (D.C. Cir. 2022) (Rao, J., dissenting from denial of rehearing en banc). Venue in actions against foreign states is proper where "the events or omissions giving rise to the claim occurred," or in the "District of Columbia." 28 U.S.C. § 1391(f). Therefore, except for suits based on (exceptionally rare) terrorist attacks in the United States, venue is proper only in the District of Columbia.

That means this Court effectively interprets the terrorism exception for the entire nation. Actions brought elsewhere are regularly transferred to the District of Columbia. *See, e.g.*, *Asemani v. Islamic Republic of Iran*, 2018 WL 3036654, at *2 (N.D. Cal. June 18, 2018). And when the rare terrorism exception case is heard outside of Washington, D.C., district courts look to "the decisions from the District of Columbia as persuasive authority," *Herrick v. Islamic Republic of Iran*, 2022 WL 3443816, at *1 n.2 (S.D. Tex. Aug. 17, 2022) because this is "the venue in which the overwhelming majority of FSIA cases are filed," *Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1174 (D. Colo. 2023).

Thus, this Court's interpretation of the terrorism exception will all but certainly be the final word on the matter. Recognizing as much, Congress has once already been forced to amend the terrorism exception in response to this Court's interpretation. *See Simon v. Republic of Iraq*, 529 F.3d 1187, 1190 (D.C. Cir. 2008) (recognizing the 2008 NDAA abrogated *Cicippio–Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C. Cir. 2004)). The full court should consider whether the statute actually needs to be amended in order to protect the victims of terrorist attacks that injure and maim, but do not kill, before tasking Congress with the job of clarifying its already-pellucid intent.

## CONCLUSION

The Court should grant rehearing en banc, reverse the panel's holding that the district court lacked subject matter jurisdiction, and remand to the panel for further proceedings on the merits.

Dated:  April 8, 2024

Respectfully submitted,

/s/ Robert J. Tolchin
Robert J. Tolchin
THE BERKMAN LAW OFFICE, LLC
829 East 15th Street, Box 7
Brooklyn, New York 11230
(718) 855-3627
rtolchin@berkmanlaw.com

/s/ Michael J. Radine
Michael J. Radine
OSEN LLC
190 Moore St., Suite 272
Hackensack, NJ  07601
(201) 265-6400
mradine@osenlaw.com

/s/ Matthew D. McGill
Matthew D. McGill
Aaron Hauptman
Samuel C. Speers
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
mmcgill@gibsondunn.com

*Attorneys for Plaintiffs Eli M. Borochov, et al.*

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume requirements of Federal Rule of Appellate Procedure 35(b)(2)(A) and Circuit Rule 35(b) because it contains 3,900 words; and

2.      This document complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.


Dated:  April 8, 2024                    Respectfully submitted,

                                         */s/ Matthew D. McGill*
                                         Matthew D. McGill
                                         GIBSON, DUNN & CRUTCHER LLP
                                         1050 Connecticut Avenue, N.W.
                                         Washington, D.C.  20036
                                         (202) 955-8500
                                         mmcgill@gibsondunn.com

# CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, I caused a true and correct copy of this petition to be electronically filed through the Court's CM/ECF system, which will send a notice of filing to all registered users.

Dated: April 8, 2024     Respectfully submitted,

*/s/ Matthew D. McGill*
Matthew D. McGill
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mmcgill@gibsondunn.com