22-7058

# United States Court of Appeals for the District of Columbia Circuit

**ELI BOROCHOV, et al.,**

*Plaintiffs-Appellants,*

v.

**ISLAMIC REPUBLIC OF IRAN, et al.,**

*Defendants-Appellees.*

**Appeal from the United States District Court for the District of Columbia
No. 1:19-cv-02855-TNM**

**BRIEF OF *AMICUS CURIAE* APPOINTED BY THE COURT
IN SUPPORT OF THE JUDGMENT BELOW**

Catherine E. Stetson
Andrew Nell (Third Year Law Student)
Samuel Gerstemeier (Third Year Law Student)
Riley Segars (Third Year Law Student)
Walker Fortenberry (Third Year Law Student)

Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
(240) 515-4609
ces3t@lawschool.virginia.edu

*Appointed counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**Parties and Amici.**

The plaintiffs in the court below were:

Eli M. Borochov
Ronen Steven Borochov
Devora Sue Borochov
Shari Mayer Borochov
Josef S. Borochov
Shira Nechama Borochov
Avraham M. Borochov
Yoav Golan
Rotem Shoshana Golan
Raphael Golan
Yehudit Golan
Matan G. Golan
Yael Golan Inbar
Nadav Golan
Shai Fishfeder
Efrat Fishfeder
Ohad Fishfeder
Omer Fishfeder
Shiri Fishfeder
Cici Jacobson
Eddy Jacobson
Chaim Goldwater
Esther Goldwater
Shmuel Gorfinkle
Sara Gorfinkle
Eshter Fishfeder
David Fishfeder

When this case was originally filed there were additional plaintiffs, but their claims were dismissed without prejudice. Those plaintiffs were:

Natanel Chaim Mark
Chava Rachel Mark
Yiska Mark

Shira Hodaia Mark Charif
Yehoshua Mordechai Mark
Miryam Mark
Orit Mark
Pdaya Menachem Mark
Ayelet Hashachar Batt
Aryeh Batt
Elisheva Hirschfeld

The appellants are the following plaintiffs:

Shari Borochov
Raphael Golan
Nadav Golan
Yael Inbar
Shai Fishfeder
Efrat Fishfeder
Ohad Fishfeder
Omer Fishfeder
Shiri Fishfeder.

Defendants below were named as follows, and are named as appellees before this Court:

The Islamic Republic of Iran
The Syrian Arab Republic

No amici appeared in the court below.

**B. Rulings Under Review.**

Under review are:

1. March 4, 2022 Memorandum Opinion of Hon. Trevor McFadden, District Judge (A575)
2. March 4, 2022 Order of Hon. Trevor McFadden, District Judge (A622)
3. April 13, 2022 Order of Hon. Trevor McFadden, District Judge (A654)

*Amicus curiae* is unaware of any official citations for any of these opinions or

orders.

**C. Related Cases.**

The case on review has never before been before this Court. To *Amicus Curiae*'s knowledge, no related appeals are pending in this Court.


Dated: March 3, 2023


/s/ Catherine E. Stetson
Catherine E. Stetson
Andrew Nell (Third Year Law Student)
Samuel Gerstemeier (Third Year Law Student)
Riley Segars (Third Year Law Student)
Walker Fortenberry (Third Year Law Student)

Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
(240) 515-4609
ces3t@lawschool.virginia.edu

*Appointed counsel for Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF AUTHORITIES ................................................................. iii

GLOSSARY OF ABBREVIATIONS .......................................................x

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED.........................................................................1

INTRODUCTION ..............................................................................1

STATEMENT OF THE CASE................................................................4

SUMMARY OF THE ARGUMENT .......................................................9

ARGUMENT ..................................................................................11

STANDARD OF REVIEW .................................................................11

I.    THE DISTRICT COURT'S RULING ON DEFAULT JUDGMENT IS A FINAL DECISION SUBJECT TO APPELLATE REVIEW. ......................12

    A.    An Entry of Judgment Under Rule 58 Shows Finality. ......................13

    B.    The District Court Unambiguously Intended That Its Judgment Be Final. ............................................................................15

II.   APPELLANTS FAILED TO SATISFY THEIR BURDEN OF PROOF.....20

    A.    Plaintiffs Must Prove Their Measure of Recovery. ...........................20

    B.    Israeli Law Controls The Proper Measure of Recovery. ...................27

    C.    The Absence of Directly Comparable Israeli Awards is Forfeited and Irrelevant.......................................................................30

        1.    The District Court properly denied plaintiffs' motion for reconsideration. ........................................................30

        2.    Appellants forfeited their allegations of a lack of analogous Israeli case law. ........................................................32

        3.    Israeli case law was otherwise available for appellants to provide the District Court. ......................................................33

    D.    The District Court Was Under No Obligation to Apply the *Heiser* Framework To The Israeli Plaintiffs' Solatium Claims.....................34

        1.    No plaintiff is entitled to damages measured under the *Heiser* framework. .........................................................36

        2.    Foreign plaintiffs are not entitled to domestic law remedies....36

i

CONCLUSION ......................................................................................................43

# TABLE OF AUTHORITIES

## Cases

*Adult Film Ass'n of America, Inc. v. Thetford*,
    776 F.2d 113 (5th Cir. 1985) ................................................ 18

*Arango v. Guzman Travel Advisors*,
    761 F.2d 1527 (11th Cir. 1985) ........................................... 16

*Ashraf-Hassan v. Embassy of France*,
    185 F. Supp. 3d 94 (D.D.C. 2016) ....................................... 31

*Attias v. CareFirst, Inc.*,
    865 F.3d 620 (D.C. Cir. 2017) ................................... 9, 17, 19

*Bankers Tr. Co. v. Mallis*,
    435 U.S. 381 (1978) ............................................. 13, 14, 16

*Bettis v. Islamic Republic of Iran*,
    315 F.3d 325 (D.C. Cir. 2003) ................................ 10, 28, 31

*Bigwood v. Def. Intel. Agency*,
    770 F. Supp. 2d 315 (D.D.C. 2011) ..................................... 32

*Bixler v. Foster*,
    596 F.3d 751 (10th Cir. 2010) ........................................... 18

*Campitelli v. Osborne*,
    16 F. App'x 196 (4th Cir. 2001) ......................................... 18

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
    142 S. Ct. 1502 (2022) ............................................... 11, 40

*Catlin v. United States*,
    324 U.S. 229 (1945) ...................................................... 13

*Ciralsky v. CIA*,
    355 F.3d 661 (D.C. Cir. 2004) ........................... 16-17, 19, 31

*Cobell v. Jewell*,
    802 F.3d 12 (D.C. Cir. 2015) ........................................... 15

\* Authorities chiefly relied upon are marked with asterisks.

iii

*Coniston Corp. v. Hoffman Estates*,
844 F.2d 461 (7th Cir. 1988) ............................................................ 16

*Connors v. Hallmark & Son Coal Co.*,
935 F.2d 336 (D.C. Cir. 1991) ......................................................... 31

*Cunningham v. Hamilton County*,
527 U.S. 198 (1999) ......................................................................... 19

*Dancy v. McGinley*,
843 F.3d 93 (2d Cir. 2016) ............................................................... 35

*Degen v. United States*,
517 U.S. 820 (1996) ......................................................................... 24

*Diocese of Winona v. Interstate Fire & Cas. Co.*,
89 F.3d 1386 (8th Cir. 1996) ............................................................ 30

*Doe by Fein v. District of Columbia*,
93 F.3d 861 (D.C. Cir. 1996) ........................................................... 11

*Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*,
604 F. Supp. 2d 22 (D.D.C. 2009) .............................................. 17-18

*Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*,
684 F. Supp. 2d 34 (D.D.C. 2010) .............................................. 17-18

*Estate of Botvin v. Islamic Republic of Iran*,
510 F. Supp. 2d 101 (D.D.C. 2007) ............................................ 17-18

*Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*,
772 F. Supp. 2d 218 (D.D.C. 2011) ......................... 17, 36-37, 41, 42

*Estate of Botvin v. Islamic Republic of Iran*,
873 F. Supp. 2d 232 (D.D.C. 2012) ............................ 17-18, 27, 28, 29, 42, 43

*Estate of Heiser v. Islamic Republic of Iran*,
466 F. Supp. 2d 229 (D.D.C. 2006) ................................... 7, 8, 10, 35

*Estate of Hirshfeld v. Islamic Republic of Iran*,
330 F. Supp. 3d 107 (D.D.C. 2018) ..................................................... 7

*Fain v. Islamic Republic of Iran*,
885 F. Supp. 2d 78 (D.D.C. 2012) .................................................... 35

iv

*Firestone Tire & Rubber Co. v. Risjord*,
  449 U.S. 368 (1981) ................................................ 19-20

*Flatow v. Islamic Republic of Iran*,
  999 F. Supp. 1 (D.D.C. 1998) ................................... 23, 24

*Fontenot v. Mesa Petroleum Co.*,
  791 F.2d 1207 (5th Cir. 1986) ........................................ 30

*\*Fraenkel v. Islamic Republic of Iran*,
  892 F.3d 348 (D.C. Cir. 2018) ...................... 10, 11, 20, 21, 22, 23, 36, 38, 39

*Glick v. W. Power Sports, Inc.*,
  944 F.3d 714 (8th Cir. 2019) ......................................... 19

*Goldberg v. UBS AG*,
  660 F. Supp. 2d 410 (E.D.N.Y. 2009) ........................... 37, 38

*Grandalski v. Quest Diagnostics Inc.*,
  767 F.3d 175 (3d Cir. 2014) ......................................... 26

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987) ..................................... 18

*Hill v. Republic of Iraq*,
  328 F.3d 680 (D.C. Cir. 2003) .............................. 10, 21, 39

*Hoggard v. Nationstar Mortg. LLC*,
  No. CV 17-99, 2021 WL 7162301 (D.D.C. Dec. 30, 2021) ............. 26

*In re Korean Air Lines Disaster of Sept. 1, 1983*,
  932 F.2d 1475 (D.C. Cir. 1991) ................................. 36, 37

*In re Sch. Asbestos Litig.*,
  789 F.2d 996 (3d Cir. 1986) ......................................... 25

*In re Tiffany*,
  252 U.S. 32 (1920) .................................................. 13

*Int'l Brotherhood of Teamsters v. Western Pa. Motor Carriers Ass'n*,
  660 F.2d 76 (3d Cir. 1981) .......................................... 16

*Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*,
  264 F. App'x 13 (D.C. Cir. 2008) .................................... 12

*Jackson v. New York*,
  289 F. App'x 434 (2d Cir. 2008) ................................................................. 17-18

*Jerez v. Republic of Cuba*,
  775 F.3d 419 (D.C. Cir. 2014) ........................................................................ 20

*Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*,
  973 F.2d 688 (9th Cir. 1992) .......................................................................... 19

*Jung v. K. & D. Mining Co.*,
  356 U.S. 335 (1958) ................................................................................ 13, 14

*Kattan v. District of Columbia*,
  995 F.2d 274 (D.C. Cir. 1993) ....................................................................... 31

*Kitt v. Capital Concerts, Inc.*,
  742 A.2d 856 (D.C. 1999) ............................................................................. 40

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
  313 U.S. 487 (1941) ...................................................................................... 40

*\*Leibovitch v. Syrian Arab Republic*,
  25 F. Supp. 3d 1071 (N.D. Ill. 2014) ...................................... 4, 5, 11, 37, 38, 41

*Leonhard v. United States*,
  633 F.2d 599 (2d Cir. 1980), *cert. denied,* 451 U.S. 908 (1981) ...................... 16

*Levka v. City of Chicago*,
  748 F.2d 421 (7th Cir. 1984) ......................................................................... 35

*Lewis v. Lynn*,
  236 F.3d 766 (5th Cir. 2001) ......................................................................... 18

*Martin-Trigona v. Gellis & Melinger*,
  830 F.2d 367 (D.C. Cir. 1987) ....................................................................... 25

*Mason v. Lister*,
  562 F.2d 343 (5th Cir. 1977) ......................................................................... 18

*Murthy v. Vilsack*,
  609 F.3d 460 (D.C. Cir. 2010) ....................................................................... 32

*Oveissi v. Islamic Republic of Iran*,
  768 F. Supp. 2d 16 (D.D.C. 2011) ...................................................... 27, 29, 41

vi

*Owens v. Republic of Sudan*,
    864 F.3d 751 (D.C. Cir. 2017), *vacated and remanded on other grounds*
    *sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020) ............ 12, 22, 41

*Peterson v. Archstone Communities LLC*,
    637 F.3d 416 (D.C. Cir. 2011) ................... 24-25

*Potter v. District of Columbia*,
    558 F.3d 542 (D.C. Cir. 2009) ...................... 32

*Pub. Citizen v. U.S. Dist. Court for D.C.*,
    486 F.3d 1342 (D.C. Cir. 2007) ...................... 19

*Sanchez v. Devashish Hospitality, LLC*,
    322 F.R.D. 32 (D.D.C. 2017) ...................... 21

*Sapp v. City of Brooklyn Park*,
    825 F.3d 931 (8th Cir. 2016) ...................... 14

*Schooley v. Kennedy*,
    712 F.2d 372 (8th Cir. 1983) ...................... 25

*Sere v. Grp. Hospitalization, Inc.*,
    443 A.2d 33 (D.C. 1982) ...................... 40-41

*Spence v. Glock, GES.m.b.H.*,
    227 F.3d 308 (5th Cir. 2000) ...................... 26

*St. Louis, I.M. & S. Ry. Co. v. S. Express Co.*,
    108 U.S. 24 (1883) ...................... 13

*Stelly v. Duriso*,
    982 F.3d 403 (5th Cir. 2020) ...................... 12

*Surtain v. Hamlin Terrace Foundation*,
    789 F.3d 1239 (11th Cir. 2015) ...................... 18-19

*Thuneibat v. Syrian Arab Republic*,
    167 F. Supp. 3d 22 (D.D.C. 2016) ...................... 27, 41, 42

*Torres-Alamo v. Puerto Rico*,
    502 F.3d 20 (1st Cir. 2007) ...................... 25

*United States v. Hark*,
    320 U.S. 531 (1944) ...................... 16

*Walker v. St. Paul Ins. Co.*,
    343 So. 2d 251 (La. Ct. App. 1977) ................................................. 24

*Walsh v. Ford Motor Co.*,
    807 F.2d 1000 (D.C. Cir. 1986) ................................................. 25, 26

*Ward v. Dixie Nat'l Life Ins. Co.*,
    257 F. App'x 620 (4th Cir. 2007) ................................................. 26

*Weinstock v. Islamic Republic of Iran*,
    No. 17-23272-Civ-Scola, 2019 WL 1507255 (S.D. Fla. Apr. 4, 2019) ............ 41

*Whelan v. Abell*,
    48 F.3d 1247 (D.C. Cir. 1995) ................................................. 32

### Statutes

28 U.S.C. § 1291 .................................. 1, 9, 12, 13, 14, 15, 16, 17, 19, 20
28 U.S.C. § 1331 ..................................................................... 1
28 U.S.C. § 1602 ..................................................................... 5
28 U.S.C. § 1605A ...................................................... 5, 23, 39, 41
28 U.S.C. § 1606 .................................................. 3, 10, 28, 30, 40
28 U.S.C. § 1608 ............................................ 3, 9, 12, 20, 22, 29, 30, 36
28 U.S.C. § 2107 .................................................................... 14

### Other Authorities

9A Wright & Miller, *Federal Practice and Procedure* § 2444 (3d. ed. 2002 & Supp. 2016) ........................................................................... 22

9C Wright & Miller, *Federal Practice & Procedure* § 2582 (3d ed. 2009) ..... 30-31

10A Wright & Miller, *Federal Practice and Procedure* § 2684 (4th ed. 2020) ... 12

Fed. R. App. P. 4 ................................................................... 14

Fed. R. Civ. P. 12 .................................................................. 11

Fed. R. Civ. P. 41 ............................................................... 3, 24

Fed. R. Civ. P. 44.1 ..................................................... 22, 28, 30, 37

Fed. R. Civ. P. 52 ...................................................... 8, 14, 15, 30, 31

Fed. R. Civ. P. 54 .................................................................. 13

Fed. R. Civ. P. 55 ............................................................... 12, 20

Fed. R. Civ. P. 58 .............................................. 9, 13, 14, 15, 16, 17, 18

Fed. R. Civ. P. 59 ............................................... 8, 14, 15, 31, 32

Rest. (Fourth) of the Foreign Relations Law of the United States Sovereign
Immunity (Preliminary Draft No. 2., 2015) ........................................... 20

Restatement (Second) of Conflict of L. (Am. L. Inst. 1977) ................ 10-11, 27-28

## GLOSSARY OF ABBREVIATIONS

FSIA          Foreign Sovereign Immunities Act

## JURISDICTIONAL STATEMENT

The United States District Court for the District of Columbia had jurisdiction pursuant to 28 U.S.C. § 1331. The District Court entered final judgment on March 4, 2022. Plaintiffs moved for reconsideration of that judgment on March 31, 2022, and were denied on April 13, 2022. Plaintiffs timely appealed seven days later. This Court has jurisdiction over the appeal from that final order under 28 U.S.C. § 1291.

## ISSUES PRESENTED

(1)     Does this Court have jurisdiction over the District Court's order granting in part and denying in part plaintiffs' motion for default judgment?

(2)     Did the District Court abuse its discretion in requiring plaintiffs who established liability under a foreign cause of action to prove their amount of recovery under that foreign law?

(3)     Did the District Court abuse its discretion by not awarding federal damages after plaintiffs failed to provide exemplar awards under foreign law?

(4)     Did the District Court abuse its discretion in denying plaintiffs' motion for reconsideration?

## INTRODUCTION

This case implicates a fundamental element of civil litigation: plaintiffs' burden of proof. Israeli citizen plaintiffs alleged torts committed within the State of Israel in violation of Israeli law. Following their motion for a default judgment, the

District Court asked the Israeli plaintiffs to present evidence of what their remedy would be under Israeli law. A551. The plaintiffs declined to present any such evidence, maintaining that they should instead receive damages based on a federal-law calculus. A571–72; A627–32. The District Court declined to apply federal damages and issued a final ruling on plaintiffs' motion for default judgment, which awarded the Israeli plaintiffs no damages. A622–24.

Plaintiffs sought reconsideration, A625, but again did not provide any evidence on what their damages would be under Israeli law. For the first time, however, plaintiffs disclosed that they would not be in a position to obtain any recovery against the defaulting defendants in Israel because Israeli courts could not obtain service of process against those defendants. A630–31. That preexisting fact was not properly presented at the reconsideration stage. It also did not explain why the plaintiffs could not prove what an Israeli court would award on their claims. The District Court denied plaintiffs' motion, and this appeal followed. A658; A659.

On appeal, plaintiff-appellants argue that the District Court was required to reach its own determination on the proper measure of damages without reference to any prior (Israeli) award. Br. 10. They also claim that the District Court committed reversible error by not relying on prior (federal) awards to measure their damages. Br. 23. These arguments are irreconcilable. They are also both incorrect. Plaintiffs bear the burden of providing each element of their case, including the proper

measure of damages, "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Because plaintiffs assert Israeli causes of action, they were required to prove their damages under that law. *See* 28 U.S.C. § 1606 (holding foreign sovereigns liable "in the same manner and to the same extent as a private individual under like circumstances" would be liable). They failed to do so.

Even if damages evidence was not a part of plaintiff's burden of proof, district courts have the inherent power to request that a party invoking its jurisdiction provide briefing on complex legal issues. *See* Fed. R. Civ. P. 41(b). That power is at its apex when a foreign plaintiff asks a U.S. court to provide a remedy to a foreign injury compensable under foreign law. The District Court acted within its discretion in denying damages when plaintiffs did not provide—after being directly asked—any assistance with determining damages under Israeli law.

Plaintiffs' new argument in their motion for reconsideration is forfeited. The federal rules guard against attempts by litigants to raise arguments available but withheld prior to the entry of judgment. And even if the argument had been timely raised, it has no substantive bearing on plaintiffs' failure to carry their burden of proof. An inability to obtain service against *these* defendants did not prevent plaintiffs from presenting evidence of Israeli awards against *other* defendants. The District Court only asked for some basis to understand the proper measure of damages for the plaintiffs' Israeli causes of action.

Plaintiffs' deficient pleadings did not require the District Court to apply the federal damages framework to the Israeli plaintiffs' claims. That framework is discretionary even when applied to American plaintiffs asserting a federal cause of action. It has no bearing as applied to foreign plaintiffs asserting a foreign cause of action. The federal guidelines do not speak to Israeli damages, and no choice-of-law analysis would point to federal law for any element of the claims asserted by the Israeli citizen plaintiffs. And while some district courts in their discretion have found that "the interests of justice" support awarding U.S. damages to foreign law claims, *see, e.g., Leibovitch v. Syrian Arab Republic*, 25 F. Supp. 3d 1071, 1087 (N.D. Ill. 2014), plaintiffs would have to prove a double abuse of discretion in the District Court's decision to not use the federal damages framework. They have not met that exceptional standard.

The District Court awarded the Israeli plaintiffs no damages because they did not prove their damages. That was within the court's discretion.

## STATEMENT OF THE CASE

This case arises from two acts of terrorism committed in Israel by Hamas, a U.S.-designated Foreign Terrorist Organization. This first attack occurred in November 2015 in Hebron, Israel, where Hamas operatives shot plaintiff Eli Borochov. A581–82. The second attack occurred a month later in Jerusalem, when

a Hamas operative drove his vehicle into a bus stop. A582–83. The victims included plaintiffs Yoav Golan and Rotem Golan. *Id.*

These three victims and sixteen members of their families sued the Islamic Republic of Iran and the Syrian Arab Republic (jointly, the "States") for their physical and emotional injuries under the state-sponsored terrorism exception in the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, alleging that the States provided material support and resources to Hamas. A575. Ten of the plaintiffs are U.S. nationals entitled to sue under the FSIA's federal cause of action, 28 U.S.C. § 1605A. A593. The remaining nine plaintiffs, and appellants here,[1] are Israeli nationals; the FSIA's cause of action does not extend to them. A593. The Israeli plaintiffs instead argued for application of Israeli law to their claims, a conclusion with which the District Court agreed after conducting a choice-of-law analysis. A502; A598–99.

The plaintiffs all moved for default judgment against the States. A382. But the Israeli plaintiffs did not provide the District Court with any evidence of Israeli law concerning several of their claims, including the required elements of the torts alleged and "how and in what amounts Israeli law compensates the injuries

---

[1] While the list of appellants and Israeli plaintiffs largely align, they do not perfectly overlap. One Israeli plaintiff, Rotem Golan, is not appealing; one U.S. plaintiff, Shari Borochov, noticed an appeal. A659.  Shari Borochov does not present any arguments pertaining to the District Court's ruling against her, however.

alleged[.]" A550–51. The District Court thus issued an order to show cause to provide the plaintiffs a further opportunity to "remedy [the] gaps in their filings." A551. The court's order itemized the information necessary to obtain relief and included a request for information on "whether and in what amount Israeli law awards damages" for the alleged injuries. A551.

In response, the Israeli plaintiffs explained that Israel does award compensatory and punitive damages for the injuries they claimed but offered no information on the amounts awarded under Israeli law or how compensatories should be calculated. A568–72; A613. Plaintiffs' citations instead were to U.S. cases. A571. And instead of pointing to what "the amount of damages would be under Israeli law," plaintiffs asserted that the District Court should simply apply federal law to calculate damages. A572.

The District Court granted in part and denied in part the plaintiffs' motion for default judgment. A622. In its memorandum opinion, the court found that it had personal and subject matter jurisdiction over plaintiffs' claims. A592–93. It further found that Iran and Syria had provided material support and resources to Hamas. A579; A581. The District Court then proceeded to analyze the States' liability under the FSIA (for the U.S. plaintiffs) and under Israeli law (for the Israeli plaintiffs). The court held that the U.S. plaintiffs had successfully proved three theories of tort liability—battery, assault, and solatium/intentional infliction of emotional distress

("IIED")[2]—and that the Israeli plaintiffs had established the States' liability for the plaintiffs' physical and emotional injuries under Israeli law. A594–97; A599–603.

Next came damages. Because the U.S. plaintiffs were suing under a federal statute, federal law governed the amount of damages owed to those plaintiffs. A604. The District Court calculated those damages using the *Heiser* framework,[3] a non-binding reference that allows courts to award damages that are consistent across cases involving similar facts. Those calculations led to an award of $55,000,000 in compensatory and punitive damages to nine of the ten U.S. plaintiffs. A622–23. Because the tenth U.S. citizen plaintiff, Shari Borochov, did not meet her husband Eli until two years after the terrorist attack, the Court found that she was not entitled to damages. A609.

The Israeli plaintiffs also asked the District Court to use the same *Heiser* framework to calculate the damages owed to them. A612. But as the District Court noted, the *Heiser* framework is part of federal damages law. *Id.* The Israeli plaintiffs were suing under Israeli substantive law; they needed to prove their recovery with

---

[2] Solatium damages are damages for the "'mental anguish, bereavement, and grief' experienced by those with a close relationship to the victim." A596 (quoting *Est. of Hirshfeld v. Islamic Repub. of Iran*, 330 F. Supp. 3d 107, 140 (D.D.C. 2018)). "Under the FSIA, a solatium claim 'is indistinguishable' from an intentional infliction of emotional distress (IIED) claim." *Id.*

[3] *Estate of Heiser v. Islamic Rep. of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

reference to that law. *Id.* The court concluded they had not done so. A617. Because plaintiffs did not meet their burden of proof, the District Court awarded no damages.[4] A617, A626. It entered this "final, appealable order" on March 4, 2022. A624.

Plaintiffs moved to amend the court's factual findings under Fed. R. Civ. P. 52(b), to alter or amend the judgment under Fed. R. Civ. P. 59(e), and for a new trial under Fed R. Civ. P 59(a) ("the reconsideration motion"), disclosing for the first time that no Israeli damages awards exist against Iran or Syria because Israel does not have a way to serve process against those States. A625; A630–31. Plaintiffs again argued for application of the *Heiser* framework to the Israeli plaintiff claims. A631–32.

The District Court denied the reconsideration motion, concluding that plaintiffs had failed to satisfy their "heavy burden" on reconsideration. A655; A658. The court observed that reconsideration of a judgment is a rare remedy reserved for instances of clear error and manifest injustice. A655–56. It then concluded that the motion sought "relief that the Court ha[d] already denied" by asking for "a second opportunity to litigate" the *Heiser* issue that it had already addressed and rejected. A657. And since the plaintiffs "could have [previously] raised" that there were no

_____

[4] The District Court did award damages to one Israeli plaintiff, Rotem Golan, under the *Heiser* framework. A613. Golan was the only Israeli plaintiff to be physically injured in the terrorist attacks, and the court found that the "interests of justice" supported application of the *Heiser* standard to her claims. A614.

Israeli judgments against Iran or Syria, the District Court held that it would "not allow them to do so now," particularly given that "the Court's Show Cause Order specifically sought this type of information." A656.[5] The plaintiffs who were denied damages timely appealed. A659.

## SUMMARY OF THE ARGUMENT

This Court has jurisdiction over the District Court's disposition of appellants' motion for default judgment. The District Court entered a final judgment consistent with the separate document requirements of Fed. R. Civ. P. 58. A judgment that is final under the Federal Rules is also a final decision granting this Court appellate jurisdiction under 28 U.S.C. § 1291. The District Court described its decision as "a final, appealable Order" and directed the clerk of the court "to close this case." A624. This Court accords great deference to a district court's intent of the finality of its orders. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017).

On the merits, appellants failed to present sufficient evidence to establish their right to relief. Plaintiffs seeking a default judgment against a foreign sovereign must establish their "right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). That burden of proof includes providing some measure of the proper

---

[5] The court also declined to reconsider its ruling denying damages to Shari Borochov, the only U.S. appellant, as the plaintiffs "point[ed] to no error in that ruling." A655 n.4.

amount of damages. *See Fraenkel v. Islamic Republic of Iran, Ministry of Foreign Affs.*, 892 F.3d 348, 353 (D.C. Cir. 2018) (requiring FSIA plaintiffs to "prove the amount of damages by a reasonable estimate" (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003)). The District Court expressly asked the plaintiffs for such evidence, but they did not provide it. A550–51; A615. The District Court was not required to independently craft a remedy without reference to the law giving rise to liability—here, the law of the State of Israel. *Cf.* 28 U.S.C. § 1606 (tying "liab[ility]" of a "foreign state" to "the law of the place where the action or omission occurred"); *see also Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003) ("[Section 1606] in effect instructs federal judges to find the relevant law, not to make it."). Appellants' belated contention at the reconsideration stage that Israeli courts could not award damages against these defendants was forfeited. It is also irrelevant to plaintiffs' ability to point to exemplar Israeli awards of solatium damages more generally.

The District Court did not abuse its discretion in declining to apply to these appellants the damages framework set forth in *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006). The *Heiser* framework offers guidelines for damages awarded under the FSIA. It is discretionary when applied to claims under federal law. *See Fraenkel*, 892 F.3d at 361. It is inapplicable when applied to claims under foreign law, which are governed by that jurisdiction's remedies. *See*

10

Restatement (Second) of Conflict of L. § 171 (Am. L. Inst. 1977). While some courts have applied federal damages to claims under foreign law in "the interests of justice," *see, e.g.*, *Leibovitch*, 25 F. Supp. 3d at 1087, such a determination is properly committed to the discretion of the district court. And to the extent that the forum's remedies should be applied in the absence of evidence on Israeli law, the proper measure of damages would be under the laws of the District of Columbia, not federal law. *See Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1506 (2022). Appellants provide no authority suggesting otherwise.

## ARGUMENT

## STANDARD OF REVIEW

Jurisdiction can be raised *sua sponte*, *see* Appointment Order, Dkt. 1983059 (raising question about this Court's jurisdiction on appeal), and is reviewed *de novo*. *See* Fed. R. Civ. P. 12(h)(3); *Doe by Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996) (because jurisdiction "goes to the foundation of the court's power to resolve a case," the court is obliged to address it *sua sponte*).

This Court reviews "FSIA damages awards for abuse of discretion." *Fraenkel*, 892 F.3d at 356. Appellants argue that this Court should treat the District Court's partial denial of their motion for default judgment as the functional equivalent of a "motion[] to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6)" and apply *de novo* review. Br. 9. But the court below found no jurisdictional defect, nor did it dismiss

appellants' complaint for failure to state a claim. The court instead found that the Israeli citizen-plaintiffs had failed to muster sufficient evidence to satisfy their burden under 28 U.S.C. § 1608(e). This Court reviews a "district court's satisfaction with the evidence presented" for abuse of discretion. *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).

## I.    THE DISTRICT COURT'S RULING ON DEFAULT JUDGMENT IS A FINAL DECISION SUBJECT TO APPELLATE REVIEW.

This Court has jurisdiction over all "final decisions of the district courts." 28 U.S.C. § 1291. "Final decisions" include appeals from default judgments under Fed. R. Civ. P. 55. *See, e.g.*, 10A Wright & Miller, *Federal Practice and Procedure* § 2684 (4th ed. 2020) ("As a final judgment, a judgment entered pursuant to Rule 55(b)(2) may be reviewed immediately by the court of appeals."); *Stelly v. Duriso*, 982 F.3d 403, 407 (5th Cir. 2020) ("A final default judgment is, at bottom, a final judgment capable of immediate appellate review."). A district court's denial of a default judgment can also be a final decision within the meaning of § 1291. *See, e.g.*, *Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co.*, 264 F. App'x 13, 14–16 (D.C. Cir. 2008) (reviewing district court's denial of default judgment in an FSIA case on appeal).

## A.    An Entry of Judgment Under Rule 58 Shows Finality.

A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945) (citing *St. Louis, I.M. & S. Ry. Co. v. S. Express Co*., 108 U.S. 24, 28 (1883)). For purposes of finality, the Supreme Court has stated that "judgments" as understood by the Federal Rules of Civil Procedure are equivalent to the "final decision" requirement of § 1291. *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384 n.4 (1978) (per curiam). A "judgment" includes "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a); *see also Jung v. K. & D. Mining Co.*, 356 U.S. 335, 336–37 (1958) (no final decision when district court had not ruled on all of the relief requested and contemplated future proceedings to be resolved with a future "final judgment"); *In re Tiffany*, 252 U.S. 32, 36 (1920) "final judgment" is the same thing as a "final decision" and that an entered "judgment" denying a party's right was final). In other words, if a court enters a "judgment" as specified by the Rules, that is sufficient finality for purposes of § 1291.

The District Court in this case did precisely that. On March 4, 2022, the District Court denied appellants' motion for default judgment; the Clerk subsequently entered judgment in accordance with the "separate document" requirement of Rule 58. *See* Fed. R. Civ. P. 58(a); A575–621; A622–24. The entry of a separate judgment is more than a mere formality. Its very purpose is to

"eliminate[] [any] uncertainties" about the finality of judgments in district courts. Fed. R. Civ. P. 58, advisory committee's note to 1963 amendment. And courts routinely rely on such entries of separate judgment to find jurisdiction under § 1291.[6]

Rule 58 judgments also start the clock for filing a notice of appeal. *See Mallis*, 435 U.S. at 384 (explaining that one purpose of the 1963 amendment to Rule 58 was to "clarify when the time for appeal" began to run); *see also* 28 U.S.C. § 2107; Fed. R. App. P. 4(a). It would be anomalous to adopt a regime in which parties are triggering the deadline in which to appeal before appellate jurisdiction exists. The District Court unequivocally fixed a date for appealability by stating that its default judgment order was "final" and "appealable." A624. Appellants rightly understood this language to mean that they were facing Fed. R. App. P 4(a)(1)(A)'s thirty-day clock and responded by filing a timely notice of appeal. *See* A659; *see also Jung*, 356 U.S. at 336–37 (asking whether district court took "any step to put a definitive end to the case and thereby fix an unequivocal terminal date for appealability").

Appellants' earlier motions further signal the finality of the District Court's default judgment order. Following the entry of judgment, the plaintiffs who were denied relief moved to amend and make new findings of fact pursuant to Fed. R. Civ. P. 52(b), to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e), and

---

[6] *See Sapp v. City of Brooklyn Park*, 825 F.3d 931, 935–36 (8th Cir. 2016) (requiring that a separate final judgment be entered for a plaintiff to determine finality).

14

for a new trial pursuant to Fed. R. Civ. P. 59. A625–26. These motions all are predicated on finality: Rule 52 permits a court to "amend its findings . . . and . . . amend *the judgment* accordingly." Fed. R. Civ. P. 52(b) (emphasis added). Rule 59(e) motions for reconsideration can only be filed after entry of a final judgment. *See Cobell v. Jewell*, 802 F.3d 12, 19 (D.C. Cir. 2015). And Rule 59(a)(2) permits a court, on a motion for a new trial after a nonjury trial, to "take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a *new* judgment." Fed. R. Civ. P. 59(a)(2) (emphasis added). By disposing of these post-judgment motions on the merits, the District Court clearly understood that its initial memorandum opinion and the accompanying Rule 58 order constituted a final decision.

### B. The District Court Unambiguously Intended That Its Judgment Be Final.

Even if the District Court had not entered a final judgment within the meaning of the Federal Rules, this Court would still have jurisdiction under § 1291 because the District Court expressed a clear intent that its decision was final. *See* A624 ("This is a final, appealable Order"). Rule 58 and other procedural rules couched in terms of "judgment" are the clearest way to ensure § 1291 jurisdiction. But the Rules are not the sole touchstone of finality. Even where a district court fails to comport with all of the procedural rules governing entry of judgments, such as Rule 58, the Supreme Court has still found finality where the court "clearly evidenced its intent

15

that the opinion and order from which an appeal was taken would represent the final decision in the case." *Mallis*, 435 U.S. at 387.

*Mallis* demonstrates that § 1291's "final decision" requirement has a practical construction as well. And other circuits have relied on *Mallis* to sustain their jurisdiction when district courts did not issue separate documents entering judgment but otherwise clearly indicated their decisions were final. *See, e.g.*, *Int'l Brotherhood of Teamsters v. Western Pa. Motor Carriers Ass'n.*, 660 F.2d 76, 79–80 (3d Cir. 1981); *Leonhard v. United States*, 633 F.2d 599, 611–12 (2d Cir. 1980), *cert. denied*, 451 U.S. 908 (1981); *Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1531 (11th Cir. 1985); *see also United States v. Hark*, 320 U.S. 531, 534–35 (1944) (holding that "a formal judgment" entered by the district judge is "prima facie" evidence of a final, appealable decision); *cf. Coniston Corp. v. Vill. of Hoffman Ests.*, 844 F.2d 461, 463 (7th Cir. 1988) (explaining that when "the grounds of the dismissal make clear that no amendment could cure the defects in the plaintiff's case, the order dismissing the complaint is final in fact and we have jurisdiction despite the absence of a formal judgment under Fed. R. Civ. P. 58").

This Court has likewise recognized that the district court's intent is a "significant factor" in assessing finality for purposes of § 1291. In *Ciralsky v. C.I.A.*, for example, this Court found that it had jurisdiction pursuant to § 1291 where the district court expressed intent to dismiss the defendant's action (rather than merely

its motion). 355 F.3d 661, 667–68 (D.C. Cir. 2004). By stating that its order dismissing the action was a "final appealable order" and declining to grant the defendant's motion to leave to file a second, amended complaint, the district court evinced the requisite intent to make the decision final for purposes of § 1291. *Id.; see also Attias*, 865 F.3d at 624–25 (finding no jurisdiction under § 1291 because the district court had "extended . . . an invitation to amend" the complaint, signaling that there would be further proceedings before the lower court).

The record before this Court shows no such contemplation of further proceedings. To the contrary, all signs indicate that the District Court intended for its judgment to be final. *See* A624 ("This is a final, appealable Order. The Clerk of the Court is requested to close this case."). This Court has previously found such language indicative of district courts' intent to terminate the proceedings before it for purposes of § 1291 jurisdiction. *Ciralsky*, 355 F.3d at 667.

Some circuits have denied jurisdiction on the basis that denial of motions for default judgment are not "final." But those decisions all rest on the failure of the district court to issue a separate judgment or otherwise evince a clear intent to terminate proceedings.[7] *See, e.g., Jackson v. New York,* 289 Fed. App'x 434, 435–

---

[7] This case is also readily distinguishable from *Est. of Botvin ex rel. Ellis v. Islamic Republic of Iran*, a FSIA case in which the district court noted that it was free to reconsider its prior denials of default judgment because it was an "interlocutory" order. 772 F. Supp. 2d 218, 223 (D.D.C. 2011). In that case, the district court had

36 (2d Cir. 2008) (declining jurisdiction over appeal from denial of default judgment where district court had not yet entered final judgment); *Campitelli v. Osborne*, 16 Fed. App'x 196, 197 (4th Cir. 2001) (unpublished decision finding no appellate jurisdiction over plaintiff's appeal from denial of default judgment against unserved parties); *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987) (appeal from denial of default judgment untimely because appeal did not ripen until district court issued final judgment); *Adult Film Ass'n of America, Inc. v. Thetford*, 776 F.2d 113, 115 (5th Cir. 1985) (no appellate jurisdiction where district court did not enter a final judgment and claims remained pending). Both those conditions are satisfied here. And in the circumstances presented here, the courts of appeal have repeatedly exercised jurisdiction over denials of default judgment. *Cf. Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) ("We review a denial of a default judgment for abuse of discretion." (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)); *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (same); *Surtain v. Hamlin Terrace*

---

previously denied multiple motions for default judgment without prejudice—but each time explicitly permitted the plaintiffs to amend and renew their motions. *Id. See Est. of Botvin v. Islamic Rep. of Iran*, 510 F. Supp. 2d 101 (D.D.C. 2007); *Est. of Botvin ex rel. Ellis v. Islamic Rep. of Iran,* 604 F. Supp. 2d 22 (D.D.C. 2009); *Est. of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 684 F. Supp. 2d 34 (D.D.C. 2010). *See also Est. of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232 (D.D.C. 2012). The judges in the *Botvin* cases did not enter final judgments under Rule 58 and clearly did not consider their prior opinions to be final in the way the District Court manifested here.

*Foundation*, 789 F.3d 1239, 1244 (11th Cir. 2015) (reviewing district court's denial of default judgment); *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 718 (8th Cir. 2019) (same). While those cases also involved the grant of a motion to dismiss or motion for summary judgment, the precise stage of the case is not relevant for purposes of jurisdiction. Because the denial of default judgment necessarily resolved the case on the merits, the courts of appeal had jurisdiction to review the district courts' orders. *Cf. Pub. Citizen v. U.S. Dist. Ct. for D.C.* 486 F.3d 1342 (D.C. Cir. 2007) ("[A]n order denying a motion for summary judgment may be reviewed on appeal 'where it is accompanied by a final order disposing of all issues before the district court.'" (quoting *Jones-Hamilton Co v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 694 n.2 (9th Cir. 1992))). The court's order here undoubtedly "disposed of all the issues before the district court." *See* A624 (describing the court's order as "final" and directing the Clerk "to close this case").

While this Court is not required to accept the District Court's determination that its order is final, *see Ciralsky*, 355 F.3d at 667, the District Court's position as "master of its docket" carries with it great deference. *Attias*, 865 F.3d at 625; *see also Cunningham v. Hamilton County*, 527 U.S. 198, 203 (1999) (noting that § 1291 serves to accord "the deference that appellate courts owe to the trial judge as the individual initially called to decide" (quoting *Firestone Tire & Rubber Co. v.*

19

*Risjord,* 449 U.S. 368, 374 (1981))). This Court should find the District Court's order final and exercise appellate jurisdiction under § 1291.

## II.    APPELLANTS FAILED TO SATISFY THEIR BURDEN OF PROOF.

Appellants were required to prove their right to recovery under Israeli law. They did not carry that burden. Appellants argue at the same time that it was impermissible for the District Court to seek any evidence of exemplar *Israeli* awards, Br. 11, and that the court committed reversible error by not relying on evidence of exemplar *American* awards, Br. 18–19. They are incorrect on both counts.

### A.    Plaintiffs Must Prove Their Measure of Recovery.

No court may enter a default judgment against a foreign sovereign unless the plaintiff establishes their "right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This "special protection" for foreign sovereigns is identical to the standard for default judgments against the United States codified in Fed. R. Civ. P. 55(d). *Jerez v. Rep. of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014). Satisfactory evidence requires the plaintiff to "support each element of the claim" and "establish[] a prima facie case that the claimant is entitled to relief." Rest. (Fourth) of the Foreign Relations Law of the United States Sovereign Immunity § 463 cmt. b (Preliminary Draft No. 2., 2015). That includes proving "the amount of recovery" to which the plaintiff is entitled. *Id.* at cmt. c. *See also Fraenkel*, 892 F.3d at 353 ("[Plaintiffs] must prove the amount of damages by a reasonable estimate." (quoting

*Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003))); *Sanchez v. Devashish Hospitality, LLC*, 322 F.R.D. 32, 37 (D.D.C. 2017) (requiring plaintiffs to "prove . . . damages to a reasonable certainty" after establishing liability).

Appellants nevertheless claim that the District Court could "not require[]" them to show comparable awards under Israeli law. Br. 11. Appellants do not suggest that the District Court should have independently consulted prior Israeli judgments to measure damages. They instead assert that the District Court, as finder of fact, could and should have awarded damages untethered to the controlling substantive law of their claims. *See id.* at 11–13. As appellants see things, the District Court's request that they prove their amount of recovery was an impermissible attempt "to take a shortcut" in fulfilling its obligations. Br. 11.

In support of this contention, Appellants advance three arguments. First, they claim that the damages awarded in similar Israeli cases "would be inadmissible" at trial and therefore could not be relied on by the District Court. Br. 11. Second, they seek to reframe this Court's opinion in *Fraenkel*, 892 F.3d 348, from one focused on the discretion of district courts to *deviate* from prior judgments to one that would bar district courts from ever *consulting* prior judgments. *See* Br. 12–14. Finally, Appellants point to one district court opinion—the first decided under the FSIA's terrorism exception—as evidence that they do not need to prove their amount of recovery. Br. 14. Each of these contentions is incorrect.

21

1. Whether prior Israeli judgments would be admissible at trial is irrelevant to plaintiffs' burden to prove their amount of recovery under Israeli law. A court "determining foreign law" can "consider any relevant material or source…whether or not…admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1; *see also* 9A Wright & Miller, *Federal Practice and Procedure* § 2444 (3d. ed. 2002 & Supp. 2016) (explaining that district courts could not properly ascertain the content of foreign law if confined to "rules of admissibility"); *Owens*, 864 F.3d at 785 (recognizing that parties in an FSIA case can "prove their claims using evidence that might not be admissible in a trial"). Indeed, appellants themselves argued below that the District Court should measure damages based on prior judgments—they simply wanted the court to refer to American, not Israeli, awards. *See* A571–72 (arguing for application of the *Heiser* framework while acknowledging that Israeli damages are lower than U.S. awards).

2. Because appellants can point to no precedent to support their argument, they seek to reframe this Court's holding in *Fraenkel*. 892 F.3d 348. In *Fraenkel*, this Court reiterated that district courts have broad discretion in awarding solatium damages under § 1608(e). *Id.* at 351. As part of that discretion, the *Fraenkel* Court recognized that district judges were not required to follow "past solatium awards" without adjusting those awards for "different plaintiffs" presenting "different facts." *Id.* at 362. But a holding that district courts are not *required* to strictly follow prior

22

damages awards does not mean that courts are *prohibited* from relying on those past awards. Indeed, such a rule would be contrary to the discretion emphasized in *Fraenkel*. And even if appellants' new rule was a permissible reading of *Fraenkel*, that case was decided under federal law. It would be illogical to apply a comparable restriction to remedies under foreign law, where district judges lack any familiarity with reasonable damages awards.

3. Appellants provide this Court with one opinion, decided shortly after Congress amended the FSIA to include the terrorism exception, that they contend was decided without reference to "any prior damages awards to use as guideposts." Br. 14 (citing *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1 (D.D.C. 1998)). But Judge Lamberth's opinion in *Flatow* in fact engaged in a rigorous review of comparable damages in reaching its conclusion. Indeed, this Court has referred to *Flatow*'s survey of solatium damages as "a seminal opinion" that "remains the best explanation of solatium damages in this circuit" and which "continues to guide dispositions of claims under the FSIA." *Fraenkel*, 892 F.3d at 356.[8]

---

[8] *Flatow* also was decided before this Court clarified that the 1996 amendments did not create a federal cause of action and before Congress reversed that decision by codifying a cause of action in § 1605A. *See* Nat'l Def. Authorization Act for Fiscal Year 2008, Pub. L. No. 110–181, § 1083, 122 Stat. 3, codified at 28 U.S.C. § 1605A. The *Flatow* judge therefore believed that the plaintiffs had a cause of action under the FSIA governed by federal common law. *Flatow*, 999 F. Supp. at 12, 14–15.

To determine the proper measure of solatium damages, the *Flatow* court undertook an extensive review of solatium damages in other jurisdictions. *Id.* at 29– 32. While the court did not highlight the prior awards in each case, it was looking to those decisions to establish the appropriate boundaries for solatium damages. And some of the cases cited in Judge Lamberth's analysis expressly noted that the amounts of past damages awards should be used as guideposts to determine whether a particular award was an abuse of discretion. *See id.* at 32 (citing *Walker v. St. Paul Ins. Co.*, 343 So.2d 251, 253 (La. App. 1977)). *Flatow* is thus a template for the approach appellants challenge: district courts crafting their damages based on prior comparable awards.

Even if damages were not a part of plaintiffs' burden of proof—and they are— the District Court would still possess the power to request briefing on Israeli damages and to deny plaintiffs' recovery when they declined to do so. In its show-cause order, the District Court asked plaintiffs to brief "[w]hether and in what amount Israeli law awards damages for . . . emotional injuries." A551. A district court may dismiss a claim "if the plaintiff fails to prosecute or to comply with . . . a court order." Fed. R. Civ. P. 41(b); *see also Degen v. United States*, 517 U.S. 820, 827 (1996) ("A federal court has at its disposal an array of means to enforce its orders, including dismissal in an appropriate case . . . . The details of these steps are committed to the discretion of the District Court."); *Peterson v. Archstone*

24

*Communities LLC*, 637 F.3d 416, 418 (D.C. Cir. 2011) ("District courts have inherent power to dismiss a case *sua sponte* for a plaintiff's failure to prosecute or otherwise comply with a court order."). Although dismissal may be a "drastic" remedy, "[w]hen a party deliberately refuses to comply with an order, and persists in such refusal in the face of impending dismissal, the court has no choice." *Martin-Trigona v. Gellis & Melinger*, 830 F.2d 367, 369 (D.C. Cir. 1987). Dismissal is warranted where a party fails to brief an issue the court directly asked them to. *See Torres-Alamo v. Puerto Rico*, 502 F.3d 20, 25 (1st Cir. 2007) (dismissing claims where plaintiff ignored issues in the court's show cause order); *Schooley v. Kennedy*, 712 F.2d 372, 373–74 (8th Cir. 1983) (upholding dismissal of *pro se* plaintiff's claims after he failed to comply with court briefing order).

The District Court was well within its discretion to request briefing on Israeli damages. For any party seeking summary judgment, the burden always rests with on the movant. Foreign plaintiffs asserting claims under foreign law must have at least as heavy a burden to prove their case. And in the domestic context, courts routinely require plaintiffs to brief issues of out-of-state law, on pain of dismissal. In nationwide class actions, for example, "movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'" *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996 (3d Cir. 1986)).

"Despite having [a] 'significant burden,'" Israeli plaintiffs here did not cite precedent, "let alone 'creditably demonstrate' through an 'extensive analysis,'" how Israel awarded emotional damages. A571–72; A627–32; *Hoggard v. Nationstar Mortg.* LLC, No. CV 17-99, 2021 WL 7162301, at *9 (D.D.C. Dec. 30, 2021) (quoting *Walsh*, 807 F.2d at 1017); *cf. also Ward v. Dixie Nat. Life Ins. Co.*, 257 F. App'x 620, 629 (4th Cir. 2007) ("When a plaintiff seeking certification fails to provide this analysis, it is not possible for the district court to determine whether any variations in state law 'pose "insuperable obstacles" to certification' of a multistate class.") (quoting *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308 (5th Cir. 2000), in turn quoting *Walsh*, 807 F.2d at 1017); *Grandalski v. Quest Diagnostics Inc.*, 767 F.3d 175, 184 (3d Cir. 2014) ("We agree with the District Court that Appellants have failed to provide a sufficient, or virtually any, analysis . . . .").

This case involves the zenith of a court's discretion to enforce its order. Foreign plaintiffs are suing a foreign sovereign under a foreign cause of action for conduct that took place in a foreign state. And because of the default judgment posture, the court lacked the checks of the adversarial process. The District Court was not in a better position than Israeli plaintiffs to discern the content of Israeli law. The court expressly requested that appellants brief their measure of Israeli damages. A551. Appellants chose not to do so. A571–72. Their choice was at least a forfeiture of any right to damages under Israeli law. And the District Court, in the exercise of

its case management authority, could properly enforce consequences when plaintiffs disregarded its order.

### B.    Israeli Law Controls The Proper Measure of Recovery.

Appellants argued below for the application of Israeli law. A502. The District Court found that a government-interest analysis favored Israeli law. A599. It held that the most significant relationship test favored Israeli law. *Id*. Appellants established their right to recovery under Israeli law. A601; A603. And as the District Court held, Israeli law thus governs the proper measure of damages. A612. *See Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 47 (D.D.C. 2016) ("[D]amages [are] calculated pursuant to the law under which liability was found . . . ."); *Est. of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232, 245 (D.D.C. 2012) ("Israeli law controls the disposition of this action . . . and this Court must account for the extent to which Israeli law would restrict or enhance available damages under the FSIA."); *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 24 (D.D.C. 2011) (holding that the court "must account for" the extent to which foreign law "would restrict (or enhance) available damages under the FSIA"); Restatement (Second) of Conflict of L. § 145 (Am. L. Inst. 1977) ("[T]he rights and liabilities of the parties . . . in tort are determined by the local of the state which . . . has the most significant relationship . . . ."); *id.* at § 171 ("the law selected

by application of the rule of § 145"—here, Israeli law—"determines the measure of damages").

The District Court had "no free-wheeling commission to construct common law" remedies for the Israeli plaintiffs. *Bettis*, 315 F.3d at 338 (D.C. Cir. 2003). Because the FSIA's sovereign immunity waiver "instructs that 'the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances,'" the District Court was "bound to look to [Israeli] law" to determine the measure of that liability. *Id.* (quoting 28 U.S.C. § 1606).

The District Court may "insist on a complete presentation by counsel" to determine the proper measure of Israeli damages. Fed. R. Civ. P. 44.1 advisory committee's note to 1966 amendment. Appellants instead chose to "provide no estimate for damages allowable under the substantive law that they admit governs their claims." A615. And the District Court accordingly "den[ied] the Israeli Plaintiffs' request for compensatory damages." A617.

In a case closely analogous to this one, Judge Lamberth considered and rejected the theory advanced by plaintiffs here. *See Botvin*, 873 F. Supp. 2d 232. The Israeli plaintiffs in that case sought to recover damages against Iran following a Hamas-orchestrated terrorist attack in Israel that killed an American citizen. *Id.* at 234, 237–39. The court found Israeli law applied to the case and that Iran was liable under that law. *Id.* at 240, 242. Because Israeli law controlled Iran's liability, it also

governed "damages under the FSIA." *Id.* at 243 (citing *Oveissi*, 768 F. Supp. 2d at 24). The court had "previously instructed plaintiffs" that it would not independently determine "Israeli damages." *Id.* at 245. But the plaintiffs provided "no guidance on the appropriate amount of solatium damages to award." *Id.* Like appellants here, those plaintiffs "failed to cite any cases containing dollar figures from which this Court could deduce the appropriate amount of a pain and suffering . . . award[ed] under Israeli law" *Id.* at 244. Plaintiffs tried to justify their solatium damages based on comparable awards under the *Heiser* framework. *Id.* at 245 n.10. But the court correctly recognized that such "authority . . . is inapplicable" because it was "decided under United States law, not Israeli law." *Id.* Because plaintiffs provided the court with no examples of Israeli awards, they "failed to meet their burden" of proof under § 1608(e). *Id.* at 244–45.

There is good reason to have such a rule. Plaintiffs that are not required to provide any evidence of Israeli damages "may desire to obfuscate" their inability to "obtain compensation" under Israeli law. *Id.* at 245. Indeed, the appellants here failed to disclose that no Israeli court would compensate their injuries until after their unfavorable judgment. *See* A630–31. Appellants also conceded that "Israeli damages 'are typically lower than awards in the United States[.]" A613 (quoting A571). But they offered no evidence of the magnitude of the difference. Instructing the District Court to go lower—with "no amounts" of how much lower—is a

standard without a boundary. *Id.* The only guard against pure arbitrariness in default judgments is a presentation of comparable awards by the plaintiff or an independent research into foreign law by the district court. The FSIA and the federal rules make clear that the burden of this task lies with the plaintiff. *See* 28 U.S.C. §§ 1606, 1608(e); Fed. R. Civ. P. 44.1

### C.    The Absence of Directly Comparable Israeli Awards is Forfeited and Irrelevant.

Only after the District Court's order denying them relief did appellants contend that no comparable cases against Iran and Syria exist under Israeli law. A630–31. That argument is both forfeited and irrelevant. It is forfeited because it comes too late; it is irrelevant because it does not explain why plaintiffs offered no comparable solatium-damage cases at all below.

### 1.    The District Court properly denied plaintiffs' motion for reconsideration.

Plaintiffs cannot use a post-judgment motion as an opportunity to offer new theories of the case after finding that their chosen litigation strategy has failed. A motion under Fed. R. Civ. P. 52(b) is not a vehicle to "raise arguments which could have been raised prior to the issuance of judgment." *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1397 (8th Cir. 1996); *see also Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219–20 (5th Cir. 1986) (collecting cases supporting the same); 9C Wright & Miller, *Federal Practice & Procedure* § 2582 (3d ed. 2009)

("A party who failed to prove his strongest case is not entitled to a second opportunity to litigate . . . ."). In light of those constraints, a party bringing a Rule 52(b) motion "bears a heavy burden" to show that the court's order contained "clear error" or would lead to "manifest injustice." *Ashraf-Hassan v. Emb. of France*, 185 F. Supp. 3d 94, 108 (D.D.C. 2016).

This Court has imposed a similarly high burden for granting motions under Rule 59(e). *See Kattan v. Dist. of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993). A party must show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest justice." *Ciralsky*, 355 F.3d at 671. And a district court's decision to deny a motion for reconsideration is reversable only for abuse of discretion. *See Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336, 341 n.9 (D.C. Cir. 1991).

Appellants did not even attempt to argue to the District Court that they met this formidable burden, nor do they indicate otherwise on appeal. *See* Br. 24. Appellants' motion instead reprised their arguments that the District Court should have treated appellants' failure to introduce evidence on Israeli damages as an invitation for the court to make its own findings on the matter. *Id.*; *see also* A629–30. *But see Bettis*, 315 F.3d at 328 ("[The FSIA] instructs [courts] to find the law, not to make it.") The District Court twice rejected that argument, and properly so.

Appellants also submitted a new expert declaration as part of their post-judgment motion. A630. This declaration informed the District Court for the first time that Israel does not permit service against Iran or Syria. A631. "At no point before" appellants' motion for reconsideration, however, did they "suggest that Israeli courts have never issued damages awards" against those States. A656. And the District Court rightly decided that they could "not . . . do so now" because "motions to reconsider are not a 'vehicle for presenting theories or arguments that could have been advanced earlier.'" A656 (quoting *Bigwood v. Def. Intel Agency*, 770 F. Supp. 2d 315, 317–18 (D.D.C. 2011)).

## 2.    Appellants forfeited their allegations of a lack of analogous Israeli case law.

This Court "reviews only those arguments that were made in the district court, absent exceptional circumstances." *Potter v. District of Columbia*, 558 F.3d 542, 547 (D.C. Cir. 2009). Those "issues not raised before judgment in the district court are usually considered to have been waived on appeal." *Murthy v. Vilsack*, 609 F.3d 460, 465 (D.C. Cir. 2010) (quoting *Whelan v. Abell*, 48 F.3d 1247, 1251 (D.C. Cir. 1995)). In *Murthy* and *Whelan*, this Court expressly rejected attempts to litigate issues that were first raised "only in [a] motion to alter or amend the judgment pursuant to [Rule] 59(e)." *Id.* That is the same procedural vehicle appellants used to first present their argument here. Appellants were twice given the opportunity *before* judgment

to inform the District Court that Israeli courts could not award damages against Iran or Syria. They twice failed to do so. *See* Br. 6–7.

Appellants point to no reason for their delay other than their decision to not consult an expert until after the District Court's adverse ruling. A630. That does not come close to satisfying the "exceptional circumstances" required to have this Court address their arguments in the first instance.

### 3. Israeli case law was otherwise available for appellants to provide the District Court.

Even if appellants' argument was timely raised below and thus properly before this Court, it is also wrong on the merits. Appellants argue that the District Court's order "was impossible to satisfy" because Israeli law requires service of process for a court to exercise jurisdiction. Br. 2. And because Israel lacks diplomatic relations with Iran and Syria, jurisdiction can never be established, and appellants can point to no case awarding damages as an exemplar. Br. 2, 6–7; A630–31.

That argument misunderstands the District Court's show-cause order. The District Court ordered appellants to submit information explaining "[w]hether and in what amount Israeli law awards damages for . . . the emotional injuries allegedly suffered by Israeli family members." A551. At most, appellants' new argument is evidence of *whether* Israeli law would grant them the relief sought against these particular defendants. But appellants' claim does not explain how a court would calculate *what amount* of damages would be awarded. *See* A639–41.

Nothing in the court's order required appellants to present evidence of emotional-injury awards in terrorism cases awarded against Iran or Syria. If no Israeli case law exists awarding relief against those States, appellants could have presented cases raising emotional-injury claims against other sovereigns. If no Israeli cases exist awarding relief against any sovereign, appellants could have presented cases involving emotional distress awards against individuals guilty of acts of terrorism. If no Israeli case law existed awarding damages against any individual defendant guilty of terrorism, appellants could have presented solatium awards under another fact pattern. Courts regularly analogize between and among similar but distinct cases. The District Court required only some modicum of evidence to measure solatium damages under Israeli law. That evidence was available to appellants. Indeed, appellants relied on expert declarations that alluded to such evidence—they simply did not present it. *See* A563–66 (discussing Israeli cases in which plaintiffs recovered solatium damages to establish the elements of a cause of action under Israeli law but providing no description of what the awards were).

### D.   The District Court Was Under No Obligation to Apply the *Heiser* Framework To The Israeli Plaintiffs' Solatium Claims.

Appellants argued below and argue on appeal that the District Court should have consulted the *Heiser* framework to measure their damages. *See* A571–72; A631–32; Br. 17–18. *Heiser* is "a standardized approach for FSIA intentional

infliction of emotional distress, or solatium, claims" developed by Judge Lamberth based on "survey[s of] past awards" in cases dealing with a deceased victim of terrorism. *Fain v. Islamic Republic of Iran*, 885 F. Supp. 2d 78, 82 (D.D.C. 2012) (referencing *Heiser*, 466 F. Supp. 2d at 269). It is a response to a longstanding problem in the law of remedies: solatium damages, by their nature, are unquantifiable, but courts must attach some value to these noneconomic injuries. The trend in the federal courts has been to use prior awards to establish boundaries for comparable injury. *See, e.g.*, *Levka v. City of Chicago*, 748 F.2d 421, 427 (7th Cir. 1984) (limiting emotional damages "in light of the awards rendered in other cases"); *Dancy v. McGinley*, 843 F.3d 93, 113–15 (2d Cir. 2016) (upholding noneconomic damages after surveying judgments in similar cases).

Appellants concede that *Heiser* is "not . . . binding" and that the District Court was "free" to deviate from its framework. Br. 16, 18. But appellants nonetheless argue that the court's failure to apply the *Heiser* framework was "error as a matter of law and an abuse of discretion." Br. 19. Appellants' argument rests on two necessary premises: U.S. plaintiffs would be entitled to damages under the *Heiser* framework, and foreign plaintiffs are entitled to the same rights and remedies as domestic citizens. Neither of those premises is correct.

### 1.    No plaintiff is entitled to damages measured under the *Heiser* framework.

District Courts are never *required* to apply the *Heiser* framework. *See Fraenkel*, 892 F.3d 348. The FSIA makes "clear that the trial judge has discretion in determining solatium damages" and "requires . . . that a plaintiff 'establish his claim or right to relief by evidence satisfactory to the court.'" *Id.* at 361 (quoting 28 U.S.C. § 1608(e)) (internal alterations omitted). *Heiser* thus "is not controlling precedent" or "a mandatory scheme under the FSIA." *Id.* And the District Court here correctly recognized that it was not required "to default to the *Heiser* framework or any other damages amount." A617. Nothing in appellants' briefing suggests otherwise.

### 2.    Foreign plaintiffs are not entitled to domestic law remedies.

Even if *Heiser* was recast from a discretionary to a deterministic model, it would not support reversal of the decision below. *Heiser* is a measure of recovery for plaintiffs asserting claims under American—not foreign—law. *Heiser*'s guidelines thus are based on average awards under a substantive law that plaintiffs did not prove their recovery under. Even as a guideline, *Heiser* is necessarily inapplicable in assessing what the proper damages award should be for the simple reason that it did not look to the law establishing liability in this case.[9]

---

[9] The only reason why the District Court could have been required to apply domestic damages would have been if Appellants had argued for dépeçage: an examination of each state's interest with respect to each particular issue in the case. *See In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495–96 (D.C. Cir. 1991). But

Appellants below pointed to *Leibovitch*, 25 F. Supp. at 1087–88, to justify application of *Heiser*. The *Leibovitch* court correctly recognized that if plaintiffs prove their right to recovery under Israeli law, then the court "must award damages according to Israeli law." *Id.* at 1086. But the plaintiffs in that case failed to provide the court with "relevant material pertaining to damages awards . . . under Israeli law," so the court "performed independent research" in an attempt to find a proper measure of damages. *Id.* at 1081, 1086; *see* Fed. R. Civ. P. 44.1 (permitting, but not requiring, such independent research for claims under foreign law). The *Leibovitch* court noted that a prior district court had concluded that Israeli damages awards are typically lower than American damages, but it otherwise possessed "little relevant information" to measure damages. *Id.* (citing *Goldberg v. UBS AG*, 660 F. Supp. 2d 410, 423 (S.D.N.Y 2009)). In "the interests of justice," the court decided to apply forum, rather than Israeli, law. *Id.* at 1086. But the court was similarly unable to locate relevant state case law measuring the proper remedy, so "in the interests of justice" it instead applied federal law—the *Heiser* framework—with some

---

appellants advanced no theory below nor on appeal for why the District of Columbia would have a greater interest than Israel in applying its remedy to Israeli plaintiffs for a tort that occurred within the state of Israel. *See Botvin*, 772 F. Supp. 2d at 226–27 (D.D.C. 2011) (rejecting a similar argument). And "courts need not address choice of law questions *sua sponte*." *Korean Air Lines Disaster*, 932 F.2d at 1495.

unspecified "downward departure" to account for Israel's less generous remedies. *Id.* at 1087–88.

As the District Court here correctly noted, this is a perilous basis for measuring damages. A616. The source of the claim on Israeli damages "originates from another out-of-district decision which dealt with a non-FSIA case and which noted simply that the defendant there had not contested the proposition about Israeli law." A616. And to the extend appellants rely on this authority, *Goldberg* concluded that plaintiffs' emotional injuries would not be recoverable under Israeli law "unless it manifests as a psychiatric illness." 660 F. Supp. 2d at 423. This noise in the data about what Israeli law does, and does not, provide is precisely why the District Court in this case concluded that appellants' "non-precedential, largely untested and unsupported claims about Israeli law" cannot serve as a proper basis to "award millions of dollars in damages against a foreign sovereign based on . . . dubious out-of-circuit authority." A616.

Appellants also pointed the District Court to a line in this Court's decision in *Fraenkel* that "we default to the application of federal law when there is a lack of information regarding the proper calculation of damages under foreign law" as evidence that the District Court was required to use the *Heiser* guidelines. A571 (quoting *Fraenkel*, 892 F.3d at 358). But *Fraenkel* does not compel resort to *Heiser*. The *Fraenkel* plaintiffs were a mix of American and Israeli citizens asserting claims

38

under § 1605A and Israeli tort law, respectively. The district court in *Fraenkel* had lowered both sets of plaintiffs' damages on the theory that (i) the terrorists had intended to target Israelis, not Americans; and (ii) the plaintiffs assumed the risk of a terrorist attack by living in an area of Israel known to be the site of terror attacks. *Id.* at 355, 358. This Court found these considerations impermissible and a clearly erroneous basis on which to limit solatium damages under the FSIA. *Id.* And because the Court lacked information on whether Israel would similarly find such factors objectionable, this Court extended its FSIA holding to also cover the Israeli plaintiff's recovery.

But *Fraenkel* went on to expressly reject the argument that district courts are ever *required* to apply the *Heiser* framework. *Id.* at 361; *supra* at 34-35. Rather, "the trial judge has discretion in determining solatium damages" and can "require[] plaintiffs to prove the amount of . . . damages 'by a reasonable estimate.'" *Fraenkel*, 892 F.3d at 361 (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003)). The District Court here correctly recognized that "*Fraenkel* does not require the Court to default to the *Heiser* framework or any other damages amount," nor can plaintiffs "rely on one sentence in that opinion to avoid their burden on default judgment." A617.

To the extent that this Court's lone sentence in *Fraenkel* can be read to require application of federal damages law in FSIA cases when plaintiffs fail to adequately

prove the foreign substantive law, that dictum is inconsistent with subsequent Supreme Court precedent. Because the Israeli Plaintiffs lacked a federal cause of action, they could "rely only on state tort law to supply the requisite cause of action." A597. Under its choice-of-law analysis, the District Court found—and appellants agreed—that Israeli substantive law should apply. A598–99. But if appellants were to have forum law apply to their damages, that would be "D.C. law as law of the forum state[.]" A598. The question is one of the forum state's choice of law rule, not federal law. *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941) (requiring federal courts to apply the choice-of-law rules of the state in which they sit). The Supreme Court recently answered this precise question, holding that, in FSIA suits raising non-federal claims, federal courts must apply the choice-of-law rules of the state in which they sit to determine the substantive law of the case. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1506 (2022). This result is "require[d]" by 28 U.S.C. § 1606. *Id.* at 1508. Appellants must therefore show that D.C. would default to its own remedial law in the absence of adequate evidence of Israeli law. And if they did, appellants would be entitled to damages under D.C. law, not *Heiser* or any other federal source.[10] *See Leibovitch*,

---

[10] Among other things, District of Columbia law may be more restrictive than federal damages. *See Kitt v. Cap. Concerts, Inc.*, 742 A.2d 856, 862 (D.C. 1999) (noting that plaintiffs can only recover emotional distress damages for injuries "so acute [in]

25 F. Supp. at 1086–87 (applying federal damages only after first looking to state law for the proper measure of damages); *Owens*, 864 F.3d at 810 & n.6, 812 (recognizing that D.C.'s IIED damages law applied to an FSIA claim and certifying a question of D.C. law to the D.C. Court of Appeals notwithstanding that several district courts had answered the question as a matter of federal law under § 1605A).

Appellants attempt to bolster their request for *Heiser* damages on appeal by citing to some district court decisions that assessed liability under foreign law yet applied federal damages. *See* Br. 16–17 (citing *Botvin*, 772 F. Supp. 2d 218; *Oveissi*, 768 F. Supp. 2d 16; *Thuneibat*, 167 F. Supp. 3d 22).[11] But none of those opinions held that the court was *required* to apply federal remedies to a foreign cause of action. Rather, each case applied federal damages as a *permissive* alternative within the discretion of the district court. *See Botvin*, 772 F. Supp. 2d at 228 (acknowledging that in the absence of evidence on foreign law, a forum can decide a case under local law); *Oveissi*, 768 F. Supp. 2d at 24–25 (looking to prior FSIA

---

nature that harmful physical consequences might be not unlikely to result" (quoting *Sere v. Grp. Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982))).

[11] Appellants also cite to *Weinstock v. Islamic Republic of Iran*, 2019 WL 1507255 (S.D. Fla. April 4, 2019), an unpublished out-of-circuit decision. *Weinstock* conducted no choice-of-law analysis and appears to have awarded relief to plaintiffs under the federal cause of action in 28 U.S.C. § 1605A. *Id.* at *2. It is therefore inapplicable to Appellants' claims here.

decisions only after determining those awards are compatible with French law, but stating such awards must be modified "to the extent the law of France would restrict (or enhance) available damages"); *Thuneibat*, 167 F. Supp. 3d at 47 (applying federal FSIA damages to a foreign cause of action "in the interest of justice"). And in *Botvin*, the court expressly warned that if "parties fail to provide an adequate statement of the law, the court is not obligated to independently remedy the deficiency." 772 F. Supp. 2d at 228. Plaintiffs in that case were later denied recovery due to the precise deficiency at issue here—a failure to prove their Israeli damages—with the court finding that it had no obligation to apply *Heiser* to remedy their failure of proof. *Botvin*, 873 F. Supp. 2d at 244–45; *see also supra* at 28.

Appellants finally make a freestanding argument about the interests of justice. Appellants argued below—and repeat in their briefing to this Court— that federal damages law should apply because it would be "unseemly and unjust" to award the Israeli plaintiffs less "based only on citizenship." A632; Br. 18–19. But the District Court correctly recognized that because "Israeli courts would be the natural forum for" appellants, "[t]here is nothing unseemly or unjust" in a result that denies U.S. "damages to Israeli Plaintiffs," A657; indeed, as appellants' motion for reconsideration reveals, an Israeli court would not award relief against these defendants, either. *See* A630–31. It was within the discretion of the District Court to determine that "the interests of justice"—the standard repeatedly cited by courts to

42

justify their application of the *Heiser* framework to foreign law claims—did not require resort to *Heiser* for the appellants in this case. Appellants were "asked . . . to provide satisfactory evidence to justify the damages they seek. They failed to do so." A617. The District Court had no obligation to "independently remedy" that failure. *Botvin*, 873 F. Supp. 2d at 244–45.

## CONCLUSION

This Court has jurisdiction over this appeal, and the District Court acted within its discretion in declining to award the appellants damages.

Respectfully submitted,

/s/ Catherine E. Stetson
Catherine E. Stetson
Andrew Nell (Third Year Law Student)
Samuel Gerstemeier (Third Year Law Student)
Riley Segars (Third Year Law Student)
Walker Fortenberry (Third Year Law Student)

Appellate Litigation Clinic
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
(240) 515-4609
ces3t@lawschool.virginia.edu

*Appointed counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This Brief complies with type volume limits, because excluding the parts of the document exempted by Rule, it contains 10,870 words.  *See,* Fed. R. App. P. 32(f).

This Brief complies with the typeface and type style requirements because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point, Times New Roman font.  *See,* Fed. R. App. P. 32(a)(7), 28.1(e)(2).

/s/ Catherine E. Stetson
Catherine E. Stetson