ORAL ARGUMENT SCHEDULED

*Appeal No. 22-7058*

IN THE

# 𝕌𝕟𝕚𝕥𝕖𝕕 𝕊𝕥𝕒𝕥𝕖𝕤 ℂ𝕠𝕦𝕣𝕥 𝕠𝕗 𝔸𝕡𝕡𝕖𝕒𝕝𝕤

FOR THE DISTRICT OF COLUMBIA CIRCUIT



ELI M. BOROCHOV; RONEN STEVEN BOROCHOV; DEVORA SUE BOROCHOV; JOSEF S. BOROCHOV; SHIRA NECHAMA BOROCHOV; ABRAHAM M. BOROCHOV; YOAV GOLAN; ROTEM SHOSHANA GOLAN; YEHUDIT GOLAN; MATAN G. GOLAN; CICI JACOBSON; EDDY JACOBSON; CHAIM GOLDWATER; ESTHER GOLDWATER; SHMUEL GORFINKLE; SARA GORFINKLE; ESTHER FISHFEDER; DAVID FISHFEDER;

*Plaintiffs,*

*and*

SHARI MAYER BOROCHOV; RAPHAEL GOLAN; NADAV GOLAN; YAEL GOLAN INBAR; SHAI FISHFEDER; EFRAT FISHFEDER; OHAD FISHFEDER; OMER FISHFEDER; SHIRI FISHFEDER,

*Plaintiffs-Appellants,*

*against*

ISLAMIC REPUBLIC OF IRAN; SYRIAN ARAB REPUBLIC,

*Defendants-Appellees.*

———————

*On Appeal from the United States District Court for the District of Columbia*

## REPLY BRIEF FOR PLAINTIFFS-APPELLANTS

Robert J. Tolchin
THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiffs-Appellants*
829 East 15th Street
Brooklyn, New York 11230
718-855-3627

**Table of Contents**

TABLE OF CONTENTS.............................................................................*i*

TABLE OF AUTHORITIES ..................................................................... *iii*

SUMMARY OF ARGUMENT ..................................................................1

ARGUMENT ..........................................................................................2

**POINT I**

DESPITE THE COURT BELOW REGARDING ITS ORDER AS FINAL,
THIS MATTER SHOULD BE REGARDED AS NON-FINAL AND
APPELLANTS SHOULD BE PERMITTED TO FILE A SECOND
MOTION FOR A DEFAULT JUDGMENT ............................................2

**POINT II**

APPELLANTS PROVIDED THE COURT BELOW WITH SUFFICIENT
INFORMATION REGARDING APPLICABLE ISRAELI DAMAGES
LAW ....................................................................................................7

**POINT III**

ABSENT SUFFICIENT INORMATION ABOUT APPLICABLE ISRAELI
DAMAGES LAW, THE DISTRICT COURT SHOULD HAVE APPLIED
FEDERAL LAW....................................................................................15

**POINT IV**

DECISIONS IN OTHER CASES—BE THEY ISRAELI OR FEDERAL
COURTS—ARE MERELY GUIDEPOSTS, NOT ESSENTIAL TO
MAKING A DAMAGES AWARD ........................................................21

**POINT V**

APPELLANTS ARE NO LESS DESERVING BECAUSE THEY ARE
NOT US CITIZENS................................................................................25

CONCLUSION ..................................................................................26

CERTIFICATE OF COMPLIANCE ....................................................28

# Table of Authorities

## Cases

*Barimany v. Urban Pace LLC,* 73 A.3d 964 (D.C. 2013) ........................................18

*Barry v. Islamic Republic of Iran*, 437 F.Supp.3d 15 (D.D.C. 2020)...............18, 19

*Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003)...................10, 11

*Blackman v. District of Columbia,* 456 F.3d 167 (D.C. Cir. 2006)........................5

*Botvin v. Islamic Republic of Iran,* 510 F.Supp.2d 101 (D.D.C. 2007) .................12

*Botvin v. Islamic Republic of Iran*, 604 F.Supp.2d 22 (D.D.C. 2009) ...................12

*Botvin v. Islamic Republic of Iran,* 684 F.Supp.2d 34 (D.D.C. 2010) ...................12

*Botvin v. Islamic Republic of Iran,* 873 F.Supp.2d 232 (D.D.C. 2012) ...........11, 12

*Brewer v. Islamic Republic of Iran,* 664 F.Supp.2d 43 (D.D.C. 2009) ..................19

*Doe v. Islamic Republic of Iran*, 808 F.Supp.2d 1 (D.D.C. 2011) ........................18

*Dukore v. District of Columbia,* 799 F.3d 1137 (D.C. Cir. 2015)...........................2

*Eisenfeld v. Islamic Republic of Iran,* 172 F.Supp.2d 1 (D.D.C. 2000)...............242

*Flatow v. Islamic Republic of Iran,* 999 F.Supp.1 (D.D.C. 1998)..........................24

*Force v. Islamic Republic of Iran,* 2022 U.S. Dist. LEXIS 133587 (D.D.C. July 27, 2022).......................................................................................17

*Fraenkel v. Islamic Republic of Iran,* 248 F.Supp.3d 21 (D.D.C. 2017) ...............14

*Fraenkel v. Islamic Republic of Iran*, 258 F.Supp.3d 77 (D.D.C. 2017) ...............22

*Fraenkel v. Islamic Republic of Iran,* 892 F.3d 348 (D.C. Cir. 2018) ............................................................. 13, 16, 20, 21, 22, 25-26

*Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006) .................19

*Heiser v. Islamic Republic of Iran,* 659 F.Supp.2d 20 (D.D.C. 2009) ...................19

*Henkin v. Islamic Republic of Iran,* 2021 U.S. Dist. LEXIS 129541, 2021 WL 2914036 (D.D.C. July 12, 2021)........................................................... 7, 8-9

*Hill v. Republic of Iraq*, 328 F.3d 680 (D.C. Cir. 2003).............................. 13, 14-15,

*Jakubowicz v. Islamic Republic of Iran*, 2022 U.S. Dist. LEXIS 144777
(D.D.C. Aug. 9, 2022).................................................................. 16-17

*Leibovitch v. Islamic Republic of Iran,* 697 F.3d 561 (7th Cir. 2012) .............25, 26

*Lelchook v. Syrian Arab Republic*, 2019 U.S. Dist. LEXIS 163642, 2019
WL 4673849 (D.D.C. 2019) ...................................................................19

*McKibben v. Philadelphia & R. Ry. Co.,* 251 F. 577 (3d Cir. 1918) .....................22

*Murphy v. Islamic Republic of Iran*, 740 F.Supp.2d 51 (D.D.C. 2010) ...................7

*Oveissi v. Islamic Republic of Iran,* 573 F.3d 835 (D.C. Cir. 2009) .......................18

*Oveissi v. Islamic Republic of Iran,* 768 F.Supp.2d 16 (D.D.C. 2011) ...................20

*Peterson v. Islamic Republic of Iran,* 515 F.Supp.2d 25 (D.D.C. 2007)................19

*Robinson-Reeder v. Am. Council on Educ.,* 571 F.3d 1333 (D.C. Cir. 2009)...........5

*Salzman v. Islamic Republic of Iran,* 2019 U.S. Dist. LEXIS 163632
(D.D.C. Sep. 25, 2019)................................................................................7

*Stethem v. Islamic Republic of Iran,* 201 F.Supp.2d 78, 89 (D.D.C. 2002) ............24

*Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555
(1931) ..........................................................................................................15

*Thuneibat v. Syrian Arab Republic,* 167 F.Supp.3d 22 (D.D.C. 2016) ............. 17-18

*Valore v. Islamic Republic of Iran,* 700 F.Supp.2d 52 (D.D.C. 2010)...................19

*Waldorf v. Shuta,* 3 F.3d 705 (3d Cir. 1993) .........................................................22

*Wilcox v. Georgetown Univ.,* 987 F.3d 143 (D.C. Cir. 2021) ...................................2

## Statutes and Rules

28 U.S.C. §1291 ......................................................................................1, 2, 5, 6

28 USC §1605A(h)(6)..................................................................................25

28 U.S.C. §1606 ..........................................................................................

Fed. R. Civ. P. 55(b) .................................................................................5

## **Other Authority**

*Standardized Civil Jury Instructions for the District of Columbia,* Chapter
    13 (Damages) .....................................................................................10

## **SUMMARY OF ARGUMENT**

The district court did not actually dismiss Appellant's claims, so denial of their motion for a default judgment was without prejudice, and was not a "final decision" under 28 U.S.C. § 1291.

Appellants provided the district court with sufficient information about Israeli law to enable the court to make a damages award in the form of the expert declaration of Prof. Gilead and the Henkin decision. Denying a judgment to Appellants because the Israeli law information they presented is imperfect is a perversion of justice.

In the absence of sufficient information about Israeli law, the district court should have defaulted to federal law, as many courts hearing FSIA cases have done.

Awards in other cases, be they Israeli or American, are at most guides for courts awarding damages. As mere guides they are not actually necessary. All that is truly necessary for a court to reach a damage award is a description of what sort of damages the applicable law allows, and facts about an individual plaintiff's actual damages.

Appellants being foreign plaintiffs asserting claims under foreign law does not affect their deserving a fair award, as Congress has deliberately authorized these suits, including on behalf of certain foreigners, to serve US policy of deterring terrorism

## ARGUMENT

### POINT I

### DESPITE THE COURT BELOW REGARDING ITS ORDER AS FINAL, THIS MATTER SHOULD BE REGARDED AS NON-FINAL AND APPELLANTS SHOULD BE PERMITTED TO FILE A SECOND MOTION FOR A DEFAULT JUDGMENT

This Court wisely tasked Amicus with "address[ing] whether the district court's denial of a default judgment constitutes a final decision within the meaning of 28 U.S.C. §1291." (Order, Jan. 24, 2023, Document #1982899).

At first blush this may appear a simple question, since the district court obviously regarded its order as a final, stating in its March 4, 2022 order, "This is a final, appealable Order. The Clerk of Court is requested to close the case." (A624). That is not really the end of the matter, though. As the adage often attributed to Lincoln goes, calling a sheep's tail a leg does not mean the sheep has five legs. Put differently, "the district court's labeling its order as 'final and appealable,' standing alone, ordinarily would not render that order appealable under Rule 54(b)." *Dukore v. District of Columbia,* 799 F.3d 1137, 1142 n.2 (D.C. Cir. 2015); *see also Wilcox v. Georgetown Univ.,* 987 F.3d 143, 150 (D.C. Cir. 2021) ("This court's precedent, which looks to the proceedings before the district court judge, also does not embrace the notion that a statement in a docket entry can alone make a non-final order final.").

- 2 -

At no point did the court below actually dismiss Appellants' claims. The claims of the other plaintiffs, certainly, have been finally adjudicated. But these Appellants' claims have technically been left in limbo. Their motion for a default judgment has been denied, but their claims have not actually been dismissed. True, the district court's February 17, 2022 order to show cause ordered Plaintiffs to "show cause why the Court should not dismiss claims by the Israeli Plaintiffs for their failure to provide sufficient information on the Israeli causes of action in their Complaint" (A551), but in the end the district court's order merely denied the motion for a default judgment, and did not actually dismiss these Appellants' complaint (A623).[1]

It would thus appear that technically the denial of the motion for a default judgment was ***without prejudice***, and Plaintiffs should actually be permitted to file a second motion for a default judgment, this time including the materials attached to

---

[1] Amicus argues that a court is empowered to issue an order to show cause requesting briefing on a particular topic on pain of dismissal for non-compliance (Amicus 25). While true, not only is that not what the district court did, but under the circumstances such would be so harsh as to be an abuse of discretion. Even if Appellants' submission in response to the order to show cause was insufficient in the district judge's eyes, it cannot be said that a reasonable attorney could not have thought the response anything other than a good faith effort to comply (*see* Point II, *infra*). If it fell short of the district court's expectations Appellants should have been given an opportunity to cure.

the motion for reconsideration (A625), or perhaps a new-and-improved declaration. With a remand from this Court clarifying that the previous order was without prejudice and that Appellants should be permitted to move again for a default judgment, Appellants would be able to proceed in the district court and anticipate a fair and just decision on that motion.

This is exactly what took place in the series of *Botvin* decisions cited in Amicus' footnote 7. In *Botvin*, plaintiff's counsel was the proverbial gang that couldn't shoot straight, and filed motion after motion for a default judgment over a period of several years, each time being denied their default judgment due to a series of infirmities in their papers. As *Botvin* illustrates, the denial of motion for a default judgment is ordinarily without prejudice.

Amicus concedes there are decisions form other circuits holding denial of motions for a default judgment is non-final, but seeks to distinguish those on the ground that "those decisions all rest on the failure of the district court to issue a separate judgment or otherwise evince a clear intent to terminate proceedings." (Amicus 17-18). Amicus contends the verbiage in the order saying that "[t]his is a final, appealable Order" (A624) is the missing piece that those other-circuit decisions did not have. But this is not so clear, since the district court did not explicitly dismiss or otherwise dispose of Appellants' claims. To dismiss Appellants' claims the district court's decision would have had to conduct an entirely

different analysis, *e.g.,* discussing the standard for a dismissal, rather than just the standard for a default judgment. No form of the word "dismiss" appears in the opinion (A575-621) or order (A622-24) denying Appellants' motion for a default judgment, or the memorandum order denying the motion for reconsideration (A654-58).

The district court gave no reasons for terming its order "final [and] appealable."

While Amicus cites only out-of-circuit cases addressing whether denial of a motion for a default judgment under Fed. R. Civ. P. 55(b) absent an order dismissing or otherwise disposing of a plaintiff's complaint can be regarded as a "final decision" for purposes of 28 U.S.C. §1291, there actually is in-circuit authority suggesting the answer is not favorable to Amicus' position. This Court has held:

> Our jurisdiction, if it exists, arises under 28 U.S.C. §1291, which "generally extends only to *final* district court orders," *Outlaw v. Airtech Air Conditioning & Heating, Inc.,* 412 F.3d 156, 159 (D.C. Cir. 2005) (citing *DSMC Inc. v. Convera Corp.,* 349 F.3d 679, 682 (D.C. Cir. 2003)) (emphasis added); ***that is, orders that dispose of an entire case both as to parties and issues***. *See Haynesworth v. Miller,* 820 F.2d 1245, 1253 (D.C. Cir. 1987).

*Blackman v. District of Columbia,* 456 F.3d 167, 174 (D.C. Cir. 2006) (bold emphasis added) (parallel citations omitted). This Court has indicated it regards finality issues very seriously. In *Robinson-Reeder v. Am. Council on Educ.,* 571 F.3d

- 5 -

1333 (D.C. Cir. 2009), the district court had dismissed fewer than all of the plaintiff's claims and the parties filed a stipulation dismissing the remaining claim without prejudice. Since there was no final judgment dismissing all claims, this Court held the decision was non-final for purposes of 28 U.S.C. §1291.

Since the court below did not dismiss Appellants' claims but rather just denied their application for a default judgment, the case technically should not be regarded as dismissed or finally disposed—regardless of what the district court said—and Appellants should still be able to file a new "second motion for a default judgment" curing whatever infirmities prevented the first motion for a default judgment from being granted.

If this Court is inclined to dismiss this appeal on finality grounds, it is respectfully requested that the Court explain its reasoning so that there are no misunderstandings in the district court on remand.

The defaulting defendants would certainly not be prejudiced if Appellants were allowed another opportunity to get it right to the district court's satisfaction—especially since Appellants reasonably believed they had met their burden for the unique default judgments here.

**POINT II**

**APPELLANTS PROVIDED THE COURT BELOW WITH
SUFFICIENT INFORMATION REGARDING APPLICABLE
ISRAELI DAMAGES LAW**

Amicus asserts that Appellants "did not provide any evidence on what their damages would be under Israeli law." (Amicus 2). But *au contraire*, Appellants referred the district court to the declaration of Israel law expert Professor Israel Gilead, which had been submitted by the plaintiffs in *Henkin v. Islamic Republic of Iran*, D.D.C. case no. 18-cv-1273.[2] (A552, A569-70). The declaration of Prof. Gilead was later docketed below, and is in the Appendix at A690. Prof. Gilead's declaration discussed the elements of damages under Israeli law applicable to claims of victims of terrorism and their family members against a defendant found to be responsible for the terrorism (A709-11). Further, Appellants provided the district court with a citation to the then-recent decision in *Henkin,* which adopted Prof.

---

[2] Appellants relied on the rule that a court hearing a motion for a default judgment in an FSIA case "may…'review evidence considered in' the prior proceeding 'without necessitating the re-presentment of such evidence.'" *Salzman v. Islamic Republic of Iran,* 2019 U.S. Dist. LEXIS 163632, at *8 (D.D.C. Sep. 25, 2019) quoting *Murphy v. Islamic Republic of Iran*, 740 F.Supp.2d 51, 59 (D.D.C. 2010). Thus, in a submission to the court below, Appellants referred to Prof. Gilead's declaration using its docket entry number 56-2 from the case of *Henkin v. Islamic Republic of Iran,* D.D.C. 19-cv-1184 (A552, A569-70).

Gilead's description of Israeli law and summarized the applicable Israeli law as follows:

> Next, Professor Gilead discusses four distinct measures of damages the Plaintiffs can recover if they win on any of those three theories of the named Defendants' liability. *Id*. at 20. * * * First, the children, as dependents, may recover for loss of pecuniary support. *Id.* In other words, they can recover for the financial support they would have received from Eitam's income had he not been killed in the attack. *Id.* Had Na'ama survived the attack, she too would be entitled to these pecuniary losses. Second, all of the Plaintiffs can recover for the emotional harm directly inflicted upon the Plaintiffs by the attack. Under Israeli law, this is called the "*Alsucha*" rule. *Id*. at 21. This is reserved for those close family members who suffered severe mental harm. *Id.* Unsurprisingly, the Court previously found (based on the declaration of Dr. Strous) that the children and Na'ama all suffered severe emotional injury as a result of the terrorist attack. *See* Findings of Fact ¶¶ 313, 319. Thus, they may recover emotional-harm damages.
>
> The third theory of recovery, bereavement compensation, is a newer theory in Israeli law. Gilead Decl. 21, ECF No. 56. It is equivalent to solatium damages in U.S. law. *Id.* But it is important to note that under Israeli law, this is a theory of recovery, not a cause of action. The Court held in a recent Israeli court case that family members of victims of terrorist attacks who were killed are entitled to compensation, as indirect victims, for their non-pecuniary harm. *Id.* (citing Civil File 4333-02 (Jerusalem) *Shemesh v. PLO* (2.11.2020)). So even if the Court had not found that Na'ama and the children suffered severe mental harm, they could still recover under this theory of bereavement. Gilead Decl. 21, ECF No. 56.

Lastly, Plaintiffs may also recover punitive damages under Israeli law. *Id.* at 22. This is, of course, not to compensate, but to punish for "immoral and outrageous act[s]." *Id.* Stemming from the American rule of punitive damages, an Israeli court in *Shemesh v. PLO* held, "specifically in cases of terrorists attack, punitive damages should be triple the amount of compensatory damages." *Id.* (citing Civil File 4333-02 (Jerusalem) *Shemesh v. PLO* (2.11.2020)). Because the attack was an "immoral and outrageous act," Plaintiffs may recover treble punitive damages.

*Henkin v. Islamic Republic of Iran,* 2021 U.S. Dist. LEXIS 129541, at *32-34, 2021 WL 2914036 (D.D.C. July 12, 2021).

Appellants respectfully submit that this statement of Israeli damages law is more than sufficient for the district court to have applied it and made a damages award based on Israeli law.

Once the legal standard on damages—akin to a jury charge—has been established, the next step is for the Court to read the declarations of the individual plaintiffs and their physicians and—as finders of fact—make a damages award. Amicus' comment that "appellants' claim does not explain how a court would calculate *what amount* of damages would be awarded" (Amicus 33) is truly remarkable as it seems uninformed of what goes on at a personal injury trial—which at bottom is what this case is. The court would calculate the amount the same way any personal injury jury would. After receiving the charge, it would do its best to apply the facts to the law as charged and reach a reasonable verdict. The description

of Israeli law in *Henkin* and the Gilead declaration is no more sparse than standard jury instructions on damages. *See Standardized Civil Jury Instructions for the District of Columbia,* Chapter 13 (Damages).

It is true that when Appellants moved for reconsideration they provided the court below with a more detailed Israeli law expert declaration from Dr. Boaz Shnoor (A634), and conceivably Appellants could have obtained a declaration from Dr. Shnoor and submitted it in response to the district court's order to show cause. However, given that the *Henkin* court had just a few months earlier found Prof. Gilead's declaration to be sufficient, and given that Dr. Shnoor does not write declarations for free (counsel endeavors to be thrifty incurring expenses that the clients will ultimately have to pay), Appellants saw no reason to reinvent the wheel obtaining a new Israeli law declaration. It was reasonable for Appellants and their counsel to believe that the expert declaration of Prof. Gilead regarding damages under Israeli that Judge Lamberth had just found sufficient in *Henkin* would be sufficient for Judge McFadden in this case. And when Judge McFadden expressed in his order that he did not believe it sufficient it was reasonable for Appellants to then seek reconsideration based on a new declaration providing more detail.

Amicus exaggerates precedent when she cites *Bettis v. Islamic Republic of Iran*, 315 F.3d 325 (D.C. Cir. 2003), for the proposition that "the District Court 'had no free-wheeling commission to construct common law' remedies for the Israeli

- 10 -

plaintiffs." (Amicus 28) (quoting *Bettis*, 315 F.3d at 338). The issue this Court addressed in *Bettis* was whether nieces and nephews of a victim could be considered immediate family entitled to recover for intentional infliction of emotional distress. This Court held that because "the FSIA provides that a 'foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances,'" *Bettis,* 315 F.3d at 338 quoting 28 U.S.C. §1606, and no such a claim had ever been allowed in any relevant jurisdiction, "we have no free-wheeling commission to construct common law as we see fit. Rather, we are bound to look to state law in an effort to fathom the 'like circumstances' to which 28 U.S.C. §1606 refers." *Bettis,* 315 F.3d at 338. The context in *Bettis* makes the meaning of these words rather different from what Amicus is pitching here. In our case, Appellants never asked the district court to make up law, or expand law beyond what had been statutorily authorized. Appellants only asked that the court ***apply*** the existing law and make a damages award based on that existing law. No free-wheeling commission required.

Amicus again exaggerates precedent in her discussion of *Botvin v. Islamic Republic of Iran,* 873 F.Supp.2d 232 (D.D.C. 2012) (Amicus 28-29). The problem in *Botvin* was that the ne'er-do-well plaintiffs had not even provided the court with any evidence of the factors under Israeli law that would permit plaintiffs to recover solatium damages—after numerous previous iterations of their motion for a default

- 11 -

judgment plagued with such problems as: 1) having submitted no evidence of "the identity of the plaintiffs, their relationship with the deceased and the impact of the bombing upon them," *Botvin v. Islamic Republic of Iran,* 510 F.Supp.2d 101, 103 (D.D.C. 2007); 2) having submitted "weighty deposition testimony and a bevy of *unsworn* statements, pictures and newspaper articles," without "explain[ing] how these documents are relevant to or aid in the satisfaction of each element of their particular claims as the court directed," or providing "guidance on the appropriate amount of solatium damages to award," *Botvin v. Islamic Republic of Iran,* 604 F.Supp.2d 22, 24 (D.D.C. 2009) (emphasis in original); 3) moving for a judgment under California law rather than Israeli law despite plaintiff having had only the most tenuous connection to California, *Botvin v. Islamic Republic of Iran*, 684 F.Supp.2d 34, 41-42 (D.D.C. 2010). The *Botvin* decision invoked by Amicus came after all that, and held that what plaintiff's umpteenth motion for a default judgment lacked was any exposition about what Israeli law provided; it was not about missing a list of verdicts. The *Botvin* court dismissed the solatium claims in that case, stating that it was "disinclined to conduct a detailed independent study of Israeli damages law where plaintiffs' counsel has not." *Botvin,* 873 F.Supp.2d at 245. Had Prof. Gilead's declaration been submitted to Judge Lamberth by the plaintiffs in *Botvin,* he undoubtedly would have found it sufficient, just as he later found it sufficient in *Henkin*.

Grasping at straws to defend the decision of the court below, Amicus culls snippets ("support each element of the claim," "establish[] a prima facie case that the claimant is entitled to relief," (brackets by Amicus) and "the amount of recovery") from obscure comments to a draft revision of the Restatement of the Foreign Relations Law of the United States (Amicus 20), and culls the catchphrase "'[Plaintiffs] must prove the amount of damages by a reasonable estimate'" from *Fraenkel v. Islamic Republic of Iran,* 892 F.3d 348, 353 (D.C. Cir. 2018) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 684 (D.C. Cir. 2003)) (brackets by Amicus).

But what did this Court actually say in *Fraenkel* and *Hill*? The context of the catchphrase quoted rom *Fraenkel* by Amicus is:

> Upon obtaining a default judgment, successful plaintiffs may recover damages by proving "that the projected consequences are reasonably certain (i.e., more likely than not) to occur, and must prove the amount of damages by a reasonable estimate." *Hill,* 328 F.3d at 684. Although these requirements "give an unresponsive sovereign some protection against an unfounded default judgment," ***plaintiffs need not submit "more or different evidence than [a court] would ordinarily receive; indeed, the quantum and quality of evidence that might satisfy a court can be less than that normally required."*** *Owens,* 864 F.3d at 785.

*Fraenkel,* 892 F.3d at 353 (brackets by *Fraenkel* court) (emphasis added). Thus, far from imposing a requirement of proving what damages have been awarded in previous similar cases in a foreign country as Amicus contends, *Fraenkel* actually

said Plaintiff's burden is no more, and is actually less, than would be required in other, non-FSIA terrorism cases.

In fact, the subsequent district court decision in the *Fraenkel* case, *Fraenkel v. Islamic Republic of Iran,* 248 F.Supp.3d 21 (D.D.C. 2017), summarized damages factors of Israeli law based on an expert declaration from Israeli law expert Dr. Boaz Shnoor. No list of damages awards granted in similar cases by Israeli courts was required.

*Hill*, the other case sound-bitten by Amicus, has context that even further undermines Amicus' position:

> Section 1606 of the FSIA provides, however, that "as to any claim for relief with respect to which a foreign state is not entitled to immunity…, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances," subject to exceptions inapplicable here. 28 U.S.C. §1606. Therefore, a FSIA default winner must prove damages "in the same manner and to the same extent" as any other default winner. * * *

> The seminal case of *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555 (1931), states the American rule on damages:

>> Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrong-doer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it

- 14 -

> will be enough if the evidence show the extent of damages as a matter of just and reasonable inference, although the result be only approximate.
>
> *Id.* at 563. * * * Regarding the amount of damages, the court instructed that while damages cannot be awarded on the basis of "mere speculation or guesswork," *Wood*, 859 F.2d at 1493, the plaintiff need only provide "some reasonable basis on which to estimate damages." *Id.* (quoting *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982)).

*Hill,* 328 F.3d at 683-84. The gist of *Hill* was clear: even if the evidence is imprecise or not as much evidence as might be nice to have, make a damages award as long as there is some reasonable basis to estimate damages, for to make no award on the ground of imperfect evidence would be "a perversion of fundamental principles of justice." *Story Parchment Co.,* 282 U.S. at 563. Amicus' invocation of *Hill* turns this Court's holding in *Hill* on its head.

## POINT III

## ABSENT SUFFICIENT INORMATION ABOUT APPLICABLE ISRAELI DAMAGES LAW, THE DISTRICT COURT SHOULD HAVE APPLIED FEDERAL LAW

Appellants argued below that in the absence of sufficient evidence of what damages would be awarded by an Israeli court, the court should default to federal law. This contention was supported by the decision of this court in *Fraenkel*, where this Court wrote exactly that:

- 15 -

> Although Abraham's ***damages*** were calculated under Israeli law, we default to the application of federal law when there is a ***lack of information regarding the proper calculation of damages*** under foreign law, as there is here. *See, e.g., Thuneibat v. Syrian Arab Republic,* 167 F.Supp.3d 22, 47 (D.D.C. 2016).

*Fraenkel,* 892 F.3d 358 (emphasis added).

Dismissively describing this language as just a "line from the circuit" (A616) and "one sentence in that opinion" (A617), the court below held this language refers to a situation where a court is "facing a dearth of information about a substantive legal question like assumption of risk" and does not apply to the issue of damages (A617)—even though damages is exactly what that "line from the circuit" was discussing, as the bolded language in the quote above makes clear.

The district judge's misunderstanding that damages law cannot be filled in with federal law is also contrary to a raft of decisions in similar cases:

> in cases (such as this one) where non-U.S. nationals fail to submit evidence or analysis regarding the availability or calculation of solatium damages under Israeli law, courts will "default to the application of federal law." *Force v. Islamic Republic of Iran*, No 16-cv-1468, 2022 U.S. Dist. LEXIS 133587, 2022 WL 2965635, at *8 (D.D.C. July 27, 2022) ("Force III") (quoting *Fraenkel v. Islamic Republic of Iran*, 892 F.3d 348, 358, 436 U.S. App. D.C. 99 (D.C. Cir. 2018)). The Court will, accordingly, apply the same U.S. tort law rules that it applied to the U.S.-citizen plaintiffs above.

*Jakubowicz v. Islamic Republic of Iran*, 2022 U.S. Dist. LEXIS 144777, at *29 (D.D.C. Aug. 9, 2022).

> Where this Court lacks information regarding the "proper calculation" of solatium damages under foreign law, it will "default to the application of federal law." *Fraenkel*, 892 F.3d at 358; *see also Thuneibat*, 167 F.Supp.3d at 47 (applying the Section 1605A framework to damages where liability was established under Jordanian law); *Oveissi v. Islamic Republic of Iran,* 768 F.Supp.2d 16, 25-26 (D.D.C. 2011) (applying the federal standard for solatium damages where liability was established under French law).

*Force v. Islamic Republic of Iran,* 2022 U.S. Dist. LEXIS 133587, at *24-25 (D.D.C. July 27, 2022).

> Normally, damages would be calculated pursuant to the law under which liability was found, in this case federal statutory law and Jordanian law. The non-U.S. nationals Khorma family plaintiffs, however, did not submit evidence regarding how solatium damages are calculated under Jordanian law. The plaintiffs' Jordanian law expert proffered only his opinion as to whether the Khorma family plaintiffs are entitled to recover damages, not how much they should be awarded. *See* Khalilieh Expert Decl. at 6. Given the lack of the information regarding the proper calculation of solatium damages under Jordanian law, the Court will, "in the interest of justice," analyze damages awards under the federal Section 1605A framework. *See Liebovitch v. Syrian Arab Republic,* 25 F.Supp.3d 1071, 1087 (N.D. Ill. 2014) (borrowing from federal law for damages assessment where the plaintiffs "failed to provide the Court with relevant material pertaining to damages award for mental injury under Israeli law" (citing *Oveissi*, 768 F.Supp.2d at 25-26 (applying the federal standard for solatium damages even though

- 17 -

liability was established under French law); *Kirschenbaum v. Islamic Republic of Iran,* 572 F.Supp.2d 200, 212-13 (D.D.C. 2008) (applying federal standard to damages while applying New York law to the underlying tort claims); and *Blais v. Islamic Republic of Iran*, 459 F.Supp.2d 40, 59-60 (D.D.C. 2006) (applying federal standard to damages and state law to liability))).

*Thuneibat v. Syrian Arab Republic,* 167 F.Supp.3d 22, 47 (D.D.C. 2016).

In *Barry v. Islamic Republic of Iran*, 437 F.Supp.3d 15 (D.D.C. 2020), an FSIA case involving numerous potentially applicable state and foreign laws, the court provided a good discussion of the choice of law process in FSIA cases. First, *Barry* noted, "'courts considering issues governed by state substantive law in FSIA cases,' such as the claims at issue here, 'should apply the choice-of-law rules of the forum state.'" *Id.*, 437 F.Supp.3d 47, quoting *Oveissi v. Islamic Republic of Iran,* 573 F.3d 835, 841 (D.C. Cir. 2009). As in *Barry*, the forum state is D.C., where choice of law rules say "[f]irst, the court is to 'determine if a conflict exists between the law of the forum and the law of the alternative jurisdictions.'" *Id.,* quoting *Doe v. Islamic Republic of Iran*, 808 F.Supp.2d 1, 20 (D.D.C. 2011). "A 'no conflict' situation arises 'when the laws of the different jurisdictions are identical or would produce the identical results on the facts presented.'" *Barry,* 437 F.Supp.3d 47 quoting *Barimany v. Urban Pace LLC,* 73 A.3d 964, 967 (D.C. 2013); *see also Thuneibat*, 167 F.Supp.3d at 41-42 (discussing standard set forth in *Barimany* and *Love*). Where there is no conflict between the foreign law and the forum state law,

the choice of law issue evaporates and the Court just applies forum law. Moreover, applying forum law furthers the policy interest of avoiding "the problem of 'disparity among the various state laws regarding the recovery of emotional distress by immediate family members.'" *Barry*, 437 F.Supp.3d at 49 quoting *Doe*, 808 F.Supp.2d at 19.

Our case is a no-conflict case. Israeli law as described in *Heiser v. Islamic Republic of Iran*, 466 F.Supp.2d 229 (D.D.C. 2006) would produce the same outcome as would result from applying the ordinary federal FSIA damages caselaw. Although the "*Heiser* framework is non-binding, it provides baseline figures and a basic methodology by which to ascertain the 'appropriate measure of damages' both for directly-injured victims and for 'the family members of victims who died' or were injured in a terrorist attack." *Lelchook v. Syrian Arab Republic*, 2019 U.S. Dist. LEXIS 163642, 2019 WL 4673849, at *4-5 (D.D.C. 2019) quoting *Peterson v. Islamic Republic of Iran,* 515 F.Supp.2d 25, 51 (D.D.C. 2007) (internal citations omitted)); *see also, e.g, Valore v. Islamic Republic of Iran*, 700 F.Supp.2d 52, 85-86 (D.D.C. 2010) (noting "strong precedential support" for framework); *Brewer v. Islamic Republic of Iran,* 664 F.Supp.2d 43, 57-58 (D.D.C. 2009); *Heiser v. Islamic Republic of Iran,* 659 F.Supp.2d 20, 27 n.4 (D.D.C. 2009). "Decisions to deviate from the starting points provided by the *Heiser* framework are committed to the

discretion of the particular court in each case." *Oveissi v. Islamic Republic of Iran,* 768 F.Supp.2d 16, 26 (D.D.C. 2011).

Appellants did not "decline[] to present…evidence" of "what their remedy would be under Israeli law" and "maintain that they should instead receive damages based on a federal law calculus," as Amicus purports to summarize Appellants' position (Amicus 1-2). This was never Appellants' position. Appellants presented evidence in the court below of the factors governing damages in a case like this under Israeli law, and thus satisfied their burden to present evidence of the applicable Israeli law. But Appellants also pointed out that federal courts in FSIA cases often apply federal damages law even when deciding a case under foreign law for liability purposes, and the Court could be guided by federal law since there is a robust history of damages awards for such cases under federal law.

While the district court was incorrect in refusing to recognize that *Fraenkel* held federal law should be used to fill in damages standards in FSIA cases, the district court was nevertheless correct that under *Fraenkel* a court applying federal law is not required to use the award formulas of *Heiser.* "There is no statutory basis for concluding that district courts must award solatium damages in the amounts that *Heiser* found commonly granted." *Fraenkel*, 892 F.3d at 361. This Court held "we are obliged to leave it to the wise discretion of our judicial colleagues on the District

Court to determine the damages that are due under the FSIA." *Fraenkel*, 892 F.3d at 362.

And that is exactly Appellants' point in this appeal. The district court should have used its discretion to make damages awards to Appellants, applying the Israeli law as presented, or drawing on federal law as *Fraenkel* held should be done. The district court should not have left Appellants bereft because of the perceived insufficiency of a foreign law expert's declaration.

## POINT IV

## DECISIONS IN OTHER CASES—BE THEY ISRAELI OR FEDERAL COURTS—ARE MERELY GUIDEPOSTS, NOT ESSENTIAL TO MAKING A DAMAGES AWARD

Amicus and the district court are misguided when they place such *sine qua non* emphasis on submission of verdicts rendered in similar cases by Israeli courts. As Appellants argued in their opening brief, it is the role of the finder of fact to make damages determinations, *i.e.* reach a verdict based on the facts of this case. While determining the substance of foreign law is a matter of law, actually reaching that verdict is a factual matter for the finder of fact which in this case happens also to be the district court.

Amicus confuses issues of law and issues of fact when she describes this case as concerning "plaintiff's burden of proof" (Amicus 1, 20). Appellants met their

burden of proof on damages by submitting their own testimony about their damages and the testimony of physicians opining about their damages (all in the form of declarations). The court has to determine what the law is. To the extent a case is governed by foreign law, plaintiffs must submit an expert legal analysis explaining the foreign law. But this is different from the burden of proof on damages.

If this case were triable to a jury, would anyone dream of calling an expert to describe to the jury verdicts in other cases? It is black-letter law that no party may present to the jury evidence regarding the amounts of verdicts awarded in other cases. *See e.g. Waldorf v. Shuta,* 3 F.3d 705 (3d Cir. 1993) (remanding for new trial because jury learned the amount of a damage award in a similar case); *McKibben v. Philadelphia & R. Ry. Co.,* 251 F. 577, 578 (3d Cir. 1918) (lambasting "the statement made by counsel of the plaintiff in his argument to the jury as to what had been done by other juries in former trials of this case").

As this Court held in *Fraenkel,* "[w]hile past solatium awards from comparable cases are appropriate sources of guidance for district courts, 'different plaintiffs (even under FSIA) will prove different facts that may well (and should) result in different damage awards.'" *Fraenkel,* 892 F.3d at 362 (quoting *Fraenkel v. Islamic Republic of Iran*, 258 F.Supp.3d 77, 82 (D.D.C. 2017)). In other words, verdicts from other cases "are appropriate sources" that ***can*** be used for guidance,

but they are ***not indispensable***, since ultimately judges must make their own decisions.

That is what Appellants would argue on this appeal in a universe where the expert declaration of Dr. Shnoor submitted with the motion for reconsideration did not exist. But why hide from reality? As Dr. Shnoor explains, there have been no Israeli verdicts in terror victim cases against state sponsors of terrorism like Syria or Iran because under Israeli law there is no way to serve process on a country with which Israel has no diplomatic relations, so such cases are stymied *ab initio*.[3] Amicus argues that instead of citing verdicts from terror victim cases against state sponsors of terrorism, Appellants should have submitted cases with different fact patterns and then drawn analogies. But this disregards that terror victim cases against state sponsors of terrorism are *sui generis* because of their very nature:

> Even where…death results from the most extreme forms of negligence, the primary visceral reaction is to the tragedy. This is not the case with

---

[3] Amicus repeatedly casts aspersions on Appellants, insinuating they should have disclosed earlier that Israeli courts have not rendered judgments against Iran or Syria because Israeli courts lack a means of serving process against these states with which Israel lacks diplomatic relations (Amicus, 2, 8). But Appellants cannot fairly be accused of trying to hide something that is not required to be submitted. As argued in Appellants' opening brief, the court below was required to review the factors Israeli law uses to determine damages and make a damages award in this case based on the facts of this case. What other courts in other cases might have awarded, *vel non*, is at most a "guide," *Frankel,* 892 F.3d at 362, but is actually unnecessary and not required.

deaths resulting from terrorist attacks, in which the tragedy itself is amplified by the malice which inspired the event. The malice associated with terrorist attacks transcends even that of premeditated murder. The intended audience of a terrorist attack is not limited to the families of those killed and wounded or even just Israelis, but in this case, the American public, for the purpose of affecting United States government support for Israel and the peace process. The terrorist's intent is to strike fear not only for one's own safety, but also for that of friends and family, and to manipulate that fear in order to achieve political objectives. Thus the character of the wrongful act itself increases the magnitude of the injury. It thus demands a corresponding increase in compensation for increased injury.

*Flatow v. Islamic Republic of Iran,* 999 F.Supp.1, 30 (D.D.C. 1998).

The unexpected quality of a death may be taken into consideration in gauging the emotional impact to those left behind. In this case the impact upon the parents and siblings was devastating. There was no reason to expect violence to come on these students' trip to visit an archeological dig. Counsel argued, and the Court agrees, that one of the aspects of terrorism is its targeting of the innocent with the intent to create maximum emotional impact. This type of action deserves a reply in damages that will fully compensate for the truly terrible emotional suffering of the surviving parents and siblings.

*Eisenfeld v. Islamic Republic of Iran,* 172 F.Supp.2d 1, 8-9 (D.D.C. 2000). "Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror." *Stethem v. Islamic Republic of Iran,* 201 F.Supp.2d 78, 89 (D.D.C. 2002).

- 24 -

Analogizing to other kinds of cases like car accidents is not useful. The deliberate nature of terror attacks intentionally perpetrated by countries puts them on another scale.

## POINT V

## APPELANTS ARE NO LESS DESERVING BECAUSE THEY ARE NOT US CITIZENS

Amicus jingoistically describes Appellants being "foreign plaintiffs asserting claims under foreign law" (Amicus 25) and "foreign plaintiffs…suing a foreign state under a foreign cause of action for conduct that took place in a foreign state" (Amicus 26), as if by bandying around the term "foreign" Appellants become less deserving of relief. But Appellants are absolutely entitled to maintain this action. Suing foreign states—not just any foreign states, mind you, but foreign states that have been designated by the Secretary of State as state sponsors of terrorism, 28 USC §1605A(h)(6)—for terrorist attacks that took place in other countries is exactly what the state sponsored terrorism exception to the FSIA is intended to permit. As this Court observed in *Fraenkel*, "over the years, Congress has amended the FSIA to allow 'massive judgments of civil liability against nations that sponsor terrorism.'" *Fraenkel*, 892 F.3d at 352 (quoting *Leibovitch v. Islamic Republic of Iran,* 697 F.3d 561, 571 (7th Cir. 2012)). "Congress clearly intended the FSIA's terrorism exception to deter states from supporting terrorism in areas of the world

like the area in which Naftali *[Fraenkel]* lived and was killed." *Fraenkel*, 892 F.3d

at 360. Indeed, the foreign element is the quintessence of the FSIA:

> Congress sought to advance the broader goal of the terrorism exception: altering the conduct of foreign nations engaged in terrorism. As detailed above, the FSIA is not generally intended to affect the substantive law of liability or to affect the primary conduct of foreign states. But the terrorism exception plays a very different role within the statutory scheme. In *Flatow v. Islamic Republic of Iran,* the first case to apply the Flatow Amendment's federal cause of action, the D.C. District Court observed: "The state sponsored terrorism provisions represent a sea change in the United States's approach to foreign sovereign immunity. For the first time, Congress has expressly created an exception to immunity designed to influence the sovereign conduct of foreign states and affect the substantive law of liability for non-immune acts." 999 F.Supp.1, 14 (D.D.C. 1998).

*Leibovitch,* 697 F.3d at 565.

No weight should be given to any argument premised on Appellants' foreign

status.

## CONCLUSION

For the above reasons, the district court's order should be reversed, and either

a judgment granting the damages awards requested in Appellants' opening Brief

should issue, or this case should be remanded with instructions to make appropriate

damages findings, or that Plaintiffs be permitted to file a second motion for a default

judgment.

Dated:  Brooklyn, New York
        March 26, 2023

                                Respectfully submitted,

                                THE BERKMAN LAW OFFICE, LLC
                                *Attorneys for Plaintiffs-Appellants*

                                by:  /s/ Robert J. Tolchin
                                        Robert J. Tolchin, Esq.

                                829 East 15th Street, Box 7
                                Brooklyn, New York 11230
                                (718) 855-3627
                                rtolchin@berkmanlaw.com

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 28(a)(10), I hereby certify that this Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the portions of this Brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), this Brief contains 6,492 words. This word count was made by use of the word count feature of Microsoft Word, which is the word processor used to prepare this Brief.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. Proc. 32(a)(6).

Dated: March 26, 2023

/s/ Robert J. Tolchin
Robert J. Tolchin
*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2023, 2 copies of the foregoing Reply Brief

for Plaintiffs-Appellants were served via Federal Express upon the following:

Catherine E. Stetson
UNIVERSITY OF VIRGINIA SCHOOL OF LAW
580 Massie Road
Charlottesville, VA 22903
(240) 515-4609

Dated: March 27, 2023

/s/ Robert J. Tolchin
Robert J. Tolchin
*Attorney for Plaintiff-Appellant*