No. 22-7058

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――――

ELI M. BOROCHOV, et al.,

Plaintiffs-Appellees,

SHARI MAYER BOROCHOV, et al.,

Plaintiffs-Appellants,

v.

ISLAMIC REPUBLIC OF IRAN; SYRIAN ARAB REPUBLIC,

Defendants-Appellees.

―――――――――――

On Appeal from the United States District Court
for the District of Columbia

―――――――――――

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

―――――――――――

BRIAN M. BOYNTON
　*Principal Deputy Assistant
　Attorney General*

SHARON SWINGLE
BRAD HINSHELWOOD
　*Attorneys, Appellate Staff
　Civil Division, Room 7256
　U.S. Department of Justice
　950 Pennsylvania Avenue NW
　Washington, DC 20530
　(202) 514-7823*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... ii

INTEREST OF THE UNITED STATES ................................................................ 1

STATEMENT OF THE ISSUES .............................................................................. 1

ARGUMENT ............................................................................................................ 2

I.   Section 1605A(a)(1) Does Not Create an Exception to Immunity for Attempted Extrajudicial Killings .............................. 2

II.  Section 1605A(a)(1) Does Not Create an Exception to Immunity for Material Support for Attempted Extrajudicial Killings ............................................................................................... 5

CONCLUSION ........................................................................................................ 9

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Cases:** Page(s)

*Braun v. United States,*
  31 F.4th 793 (D.C. Cir. 2022) .................................................................. 8

*Federal Republic of Germany v. Philipp,*
  141 S. Ct. 703 (2021) .............................................................................. 8

*Force v. Islamic Republic of Iran,*
  610 F. Supp. 3d 216 (D.D.C. 2022) ............................................... 3, 5, 8

*Mamani v. Sanchez Bustamante,*
  968 F.3d 1216 (11th Cir. 2020) ........................................................... 2-3

*Owens v. Republic of Sudan,*
  864 F.3d 751 (D.C. Cir. 2017), *vacated and remanded
  on other grounds sub nom. Opati v. Republic of Sudan,*
  140 S. Ct. 1601 (2020) ................................................................... 3, 6, 7

*Slack Techs., LLC v. Pirani,*
  143 S. Ct. 1433 (2023) ........................................................................... 5

*Van Beneden v. Al-Sanusi,*
  709 F.3d 1165 (D.C. Cir. 2013) ............................................................. 7

**Statutes:**

Foreign Sovereign Immunities Act of 1976 (FSIA):
  28 U.S.C. § 1605A(a)(1) .................................................................... 1, 2
  28 U.S.C. § 1605A(a)(2)(A)(i)(I) ........................................................... 4
  28 U.S.C. § 1605A(a)(2)(A)(ii)-(iii) ....................................................... 4
  28 U.S.C. § 1605A(a)(2)(B) ................................................................... 4
  28 U.S.C. § 1605A(c) ............................................................................ 4
  28 U.S.C. § 1605A(d) ............................................................................ 4
  28 U.S.C. § 1605A(h)(7) ....................................................................... 2

Iran and Libya Sanctions Act of 1996,
   Pub. L. No. 104-172, 110 Stat. 1541:
      § 2(1), 110 Stat. at 1541 .................................................................... 4
      § 14(1), 110 Stat. at 1549 (50 U.S.C. § 1701 note) .............................. 4

Torture Victim Protection Act of 1991,
   Pub. L. No. 102-256, 106 Stat. 73 (1992):
      § 2(a)(2), 106 Stat. at 73 ...................................................................... 3
      § 3(a), 106 Stat. at 73 (28 U.S.C. § 1350 note) .................................... 2

18 U.S.C. § 1113 ............................................................................................ 3

18 U.S.C. § 2331(4) ....................................................................................... 4

18 U.S.C. § 2339A(a) .................................................................................... 7

18 U.S.C. § 2441 ............................................................................................ 3

34 U.S.C. § 20144(b)(2) ................................................................................. 8

34 U.S.C. § 20144(d)(3) ................................................................................. 8

**Other Authorities:**

For, *American Heritage Dictionary* (3d ed. 1994) .................................... 6

Memorandum Op., *Burks v. Islamic Republic of Iran*,
   No. 1:16-cv-01102-CRC (D.D.C. Sept. 30, 2022) ................................. 4

Such, *Webster's New Int'l Dictionary* (2d ed. 1958) ................................ 5

## INTEREST OF THE UNITED STATES

The United States has a substantial interest in the proper interpretation of the Foreign Sovereign Immunities Act (FSIA). Litigation against foreign states in U.S. courts can have significant implications for foreign relations and for the United States' reciprocal treatment in foreign courts. While the United States believes that the district court erred in holding that 28 U.S.C. § 1605A(a)(1) applies, the United States deplores the atrocities committed against victims of acts of terrorism.

## STATEMENT OF THE ISSUES

1) Whether the exception to immunity in 28 U.S.C. § 1605A(a)(1) applies where only an attempted extrajudicial killing occurred.

2) Whether that exception applies where the provision of material support for an extrajudicial killing caused only non-lethal injuries.

## ARGUMENT

### I. Section 1605A(a)(1) Does Not Create an Exception to Immunity for Attempted Extrajudicial Killings

Section 1605A(a)(1) of the FSIA creates an exception to the presumption of foreign state immunity for damages suits against state sponsors of terrorism "for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1).

This exception is inapplicable when a state carries out an act that constitutes an *attempted* extrajudicial killing. Section 1605A(a)(1) incorporates the definition of "extrajudicial killing" from the Torture Victim Protection Act of 1991 (TVPA), defining the term as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." Pub. L. No. 102-256, § 3(a), 106 Stat. 73, 73 (1992) (28 U.S.C. § 1350 note); 28 U.S.C. § 1605A(h)(7).

The district court correctly held that "an attack cannot be a 'killing[]' … if nobody dies." A587; *Mamani v. Sanchez Bustamante*, 968

2

F.3d 1216, 1233 (11th Cir. 2020) (definition requires "a considered, purposeful act that takes another's life"); *Owens v. Republic of Sudan*, 864 F.3d 751, 770 (D.C. Cir. 2017) (describing "a killing" as an "element[]" of the definition), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020).  Notably, the TVPA definition of "extrajudicial killing" is employed under a statute that authorizes civil suits for wrongful death, which requires a fatality.  *See* TVPA § 2(a)(2), 106 Stat. at 73; *Force v. Islamic Republic of Iran*, 610 F. Supp. 3d 216, 223 (D.D.C. 2022).  By contrast, where Congress intends to create liability for attempts, it generally says so expressly.  *See, e.g.*, 18 U.S.C. § 1113 (attempted murder or manslaughter); *id.* § 2441 (including "attempts to kill" in definition of "murder" in part of war crimes statute).

Plaintiffs suggest (Suppl. Br. 4) that the phrase "act of … extrajudicial killing" could encompass "the process of committing an extrajudicial killing" even if no killing actually results.  Plaintiffs cite no other circumstance where similarly oblique language has been held to encompass attempts, and "[t]he primary, and most intuitive, understanding of the word 'act' is '[s]omething done or performed' or 'a

3

deed.'" Memorandum Op. at 20, *Burks v. Islamic Republic of Iran*, No. 1:16-cv-01102-CRC (D.D.C. Sept. 30, 2022) (citation omitted). In this context, the phrase simply identifies the particular completed killing that meets the statutory definition, just as one refers to "an act of terrorism" or "an act of war" to identify a completed act of that type. *See, e.g.*, Iran and Libya Sanctions Act of 1996, Pub. L. No. 104-172, § 14(1), 110 Stat. 1541, 1549 (50 U.S.C. § 1701 note) (defining "act of international terrorism" as including completed acts); *id.* § 2(1), 110 Stat. at 1541 (noting Iran's "support of acts of international terrorism"); 18 U.S.C. § 2331(4) (defining "act of war" to encompass completed acts). The remainder of § 1605A reinforces that view, repeatedly referring to "the act" or "acts" that provide jurisdiction in ways difficult to square with reading "act" as referring to a process rather than a completed action. 28 U.S.C. § 1605A(a)(2)(A)(i)(I), (a)(2)(A)(ii)-(iii), (a)(2)(B), (c), (d).

Because an attempted extrajudicial killing is not a killing, § 1605A(a)(1) does not create an exception to a state's immunity to suits seeking damages for attempted extrajudicial killings.

4

## II. Section 1605A(a)(1) Does Not Create an Exception to Immunity for Material Support for Attempted Extrajudicial Killings

The same result follows when a state is sued for its alleged provision of material support for an attempted extrajudicial killing. Section 1605A(a)(1) creates an exception to immunity for a state that provides material support "for such an act." That phrase refers back to the enumerated acts to which the exception applies: "an act of torture, extrajudicial killing, aircraft sabotage, [or] hostage taking." That is the function of "such," which is generally used to denote "something that has already been 'described' or that is 'implied or intelligible from the context or circumstances.'" *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1439-40 (2023) (citation omitted); *see, e.g.*, Such, *Webster's New Int'l Dictionary* (2d ed. 1958). The term "for," in turn, connects the predicate act and the material support, indicating that the support must ultimately aid such an act to be within the exception. The exception thus applies where a state provides material support for an act of extrajudicial killing; if there is no killing that meets that definition, the material support was not "provided for 'such an act.'" *Force*, 610 F. Supp. 3d at 225.

5

The district court here reached the opposite conclusion.  Because the word "for" can sometimes "'indicate the object or purpose of an action or activity,'" the district court held that suit is authorized if the state provides material support with the "intention or objective" that an extrajudicial killing occur.  A589 (alteration omitted) (quoting *For, American Heritage Dictionary* (3d ed. 1994)); *see* Plaintiffs' Suppl. Br. 3-4; Court-Appointed Amicus Br. 1-2, 4.  The result would be that a state is liable for furnishing material support for an attempted extrajudicial killing by others but not liable if it directly committed the same act.

This Court, however, has already rejected the premise that "the use of 'for' with reference to 'the provision of material support' indicates that the FSIA 'requires a showing of intent' on the part of the foreign sovereign to achieve the predicate act," explaining that "[n]othing in the FSIA[] … requires a greater showing of intent than proximate cause." *Owens*, 864 F.3d at 798.  Just as plaintiffs need not prove that a state intended to support a particular terrorist act, plaintiffs need not show that the state intended its material support to make possible an act of extrajudicial killing.  Instead, the statute examines whether a predicate act causing death or injury occurred, and if so, whether the state's

6

material support proximately caused that death or injury. Congress easily could have employed language requiring examination of the state's intent, but did not. *Compare* 18 U.S.C. § 2339A(a) (criminalizing providing "material support or resources … knowing or intending that they are to be used" to aid certain acts). Imposing this sort of intent requirement in § 1605A(a)(1) would create unwarranted difficulties in tracing inherently fungible material support and proving liability, as support can easily be applied to other predicate acts or provided with no particular act in mind. *See Owens*, 864 F.3d at 799.

  The district court mistakenly invoked this Court's statement that "ambiguities" in § 1605A should be interpreted "flexibly and capaciously." *Van Beneden v. Al-Sanusi*, 709 F.3d 1165, 1167 (D.C. Cir. 2013); A589. The text and structure make plain that an exception based on extrajudicial killing requires a killing. In any event, the Supreme Court has emphasized that foreign sovereigns are "presumptively immune" from suit except in "specific" enumerated statutory circumstances, and has warned about the need "to avoid, where possible, 'producing friction in our relations with [other] nations and leading some to reciprocate by granting their courts permission to

7

embroil the United States in expensive and difficult litigation'" by adopting broad interpretations of FSIA exceptions. *Federal Republic of Germany v. Philipp*, 141 S. Ct. 703, 707, 714 (2021) (citation omitted).

Plaintiffs' policy arguments (Suppl. Br. 4-6) do not alter the result. "Each prong of the state-sponsored terrorism exception to the FSIA requires line-drawing and will inevitably exclude some cases that involve horrific conduct and grievous injuries." *Force*, 610 F. Supp. 3d at 228. Moreover, plaintiffs are rarely able to enforce judgments against state sponsors of terror. They are instead generally compensated on a pro rata basis from a fund created by Congress and largely derived from "proceeds from penalties paid by companies and individuals that violate sanctions imposed on state sponsors of terrorism." *Braun v. United States*, 31 F.4th 793, 795 (D.C. Cir. 2022); *see* 34 U.S.C. § 20144(b)(2), (d)(3). "[E]xpanding the pool of eligible claimants will inevitably affect the ability of other claimants to receive prompt compensation," and "[t]he question of how best to balance these competing interests in a limited fund is best left to Congress." *Force*, 610 F. Supp. 3d at 224-25.

8

## CONCLUSION

The district court lacked jurisdiction over these claims.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

SHARON SWINGLE

 */s/ Brad Hinshelwood* 
BRAD HINSHELWOOD
*Attorneys, Appellate Staff
Civil Division, Room 7256
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-7823*

June 2023

# CERTIFICATE OF COMPLIANCE

This brief complies with the Court's order of May 4, 2023, because it contains 1,500 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. In addition, in compliance with the Court's May 4, 2023 order, I caused paper copies of this brief to be hand-delivered to the Clerk's office by 4pm on June 26, 2023.

*s/ Brad Hinshelwood*
BRAD HINSHELWOOD